In the Matter of BUSINESS STATISTICS ORGANIZATION, INC., Respondent, against LAZARUS JOSEPH, as Comptroller of the City of New York, et al., Appellants.

Argued May 17, 1949; decided July 19, 1949.

*John P. McGrath, Corporation Counsel* (*Isaac C. Donner, Solomon Portnow* and *Janet H. Lewin* of counsel), for appellants. I. Petitioner's transactions are sales of tangible personal property and, therefore, taxable under the terms of the city sales tax laws. Petitioner's publications are not newspapers or periodi-

cals within the exemption provision of those laws. (*Matter of Moody's Investors Service* v. *McGoldrick,* 254 App. Div. 726, 280 N. Y. 581; *Smith* v. *Wilcox,* 24 N. Y. 353; *People ex rel. Passafume,* 22 N. Y. S. 2d 785; *People ex rel. Foremost Studio* v. *Graves,* 246 App. Div. 130; *People ex rel. Walker Engraving Corp.* v. *Graves,* 268 N. Y. 648; *Pagano, Inc.,* v. *City of New York,* 295 N. Y. 784; *Andersen* v. *City of New York,* 295 N. Y. 782; *Hannegan* v. *Esquire, Inc.,* 327 U. S. 146; *Finnegan* v. *Buck,* 230 N. Y. 512; *Williams* v. *Colwell,* 14 App. Div. 26; *People ex rel. Utica Sunday Tribune Co.* v. *Williams,* 140 App. Div. 58; *Matter of Mounting & Finishing Co.* v. *McGoldrick,* 294 N. Y. 104.) II. The city sales tax as applied to publications other than newspapers and periodicals is constitutional, because it does not discriminate against or hinder the issuance or circulation of such publications and does not impose any undue restraint or burden upon such publications. (*Mabee* v. *White Plains Pub. Co.,* 327 U. S. 178; *Oklahoma Press Pub. Co.* v. *Walling,* 327 U. S. 186; *Associated Press* v. *United States,* 326 U. S. 1; *Arizona Pub. Co.* v. *O'Neil,* 304 U. S. 543; *Giragi* v. *Moore,* 49 Ariz. 74; *Associated Press* v. *National Labor Relations Bd.,* 301 U. S. 103; *Grosjean* v. *American Press Co.,* 297 U. S. 233.) III. The assessment for the periods from December 10, 1934, to June 30, 1939, was not barred by the Statute of Limitations. (*Matter of Dee* v. *State Tax Comm.,* 257 App. Div. 531, 282 N. Y. 617; *Isenberg* v. *Rainier,* 70 Misc. 498, 145 App. Div. 256; *Lucas* v. *Pilliod Lumber Co.,* 281 U. S. 245; *Matter of Hewitt* v. *Bates,* 297 N. Y. 239; *Commissioner* v. *Lane-Wells Co.,* 321 U. S. 219.)

*Earl Q. Kullman, William A. Sheehan* and *H. Maurice Fridlund* for respondent. I. Subscriptions to petitioner's weekly and monthly periodicals are not sales of tangible personal property. Such periodicals are expressly excluded from the operation of the New York City sales tax. (*Dun & Bradstreet* v. *City of New York,* 276 N. Y. 198; *Booth* v. *City of New York,* 268 App. Div. 502, 296 N. Y. 573; *Stampers Arrival of Buyers* v. *City of New York,* 269 App. Div. 741, 296 N. Y. 574; *Matter of Good Humor Corp.* v. *McGoldrick,* 289 N. Y. 452; *Howitt* v. *Street & Smith Publications,* 276 N. Y. 345.) II. Respondent's publications have been expressly excluded from the operation of the New York City sales tax law by the provisions of schedule A.

(*Houghton* v. *Payne,* 194 U. S. 88; *People ex rel. Mosbacher* v. *Graves,* 254 App. Div. 438, 279 N. Y. 793; *Matter of Weiden,* 263 N. Y. 107; *Matter of Lande,* 241 App. Div. 138.)  III. Respondent's publications are vehicles for the dissemination of news and should be classified as "newspapers". (*Grosjean* v. *American Press Co.,* 297 U. S. 233; *Hannegan* v. *Esquire, Inc.,* 327 U. S. 146; *Smith* v. *Hitchcock,* 226 U. S. 53; *Winters* v. *New York,* 333 U. S. 507.)  IV. Respondent is entitled to restrict the use of its published material. (*People* v. *Gitlow,* 234 N. Y. 132; *Merchants' Nat. Bank* v. *Hall,* 83 N. Y. 338; *Lepler* v. *Palmer,* 150 Misc. 546; *Dodge Co.* v. *Construction Information Co.,* 183 Mass. 62.)  V. The Appellate Division properly held that appellants' determination had the effect of an unlawful attempt at censorship contrary to the Federal and State constitutional guaranties of freedom of speech and freedom of the press. (*Grosjean* v. *American Press Co.,* 297 U. S. 233; *Hannegan* v. *Esquire, Inc.,* 327 U. S. 146; *People* v. *Winters,* 294 N. Y. 545, affd. *sub nom. Winters* v. *New York,* 333 U. S. 507; *Takahashi* v. *Fish & Game Comm.,* 334 U. S. 410; *Railway Express Agency* v. *New York,* 336 U. S. 106; *Moore* v. *Dempsey,* 261 U. S. 86; *Matter of Gruner* v. *McNamara,* 298 N. Y. 395; *Matter of 54 Cafe & Restaurant* v. *O'Connell,* 274 App. Div. 428, 298 N. Y. 883.)  VI. The deficiencies for the tax periods from December 10, 1934, to June 30, 1939, were barred by limitation on July 1, 1943, and should be annulled. (*Mack* v. *Mendels,* 249 N. Y. 356; *Matter of Russo* v. *Valentine,* 294 N. Y. 338; *Taylor* v. *New York Central R. R. Co.,* 294 N. Y. 977; *Saltser & Weinsier, Inc.,* v. *McGoldrick,* 295 N. Y. 499; *Olcott* v. *Tioga R. R. Co.,* 20 N. Y. 210.)

CONWAY, J.  Pursuant to an enabling act (L. 1934, ch. 873), the City of New York adopted a local law which imposes a tax "upon the amount of the receipts from every sale of tangible personal property sold at retail, except those articles described in schedule ' A ' of this section." Schedule " A " lists, among other things, "newspapers and periodicals" (Administrative Code of City of New York, § N41–2.0, subd. a.) " Tangible personal property " is defined as " Corporeal personal property of any nature." (Administrative Code, § N41–1.0, subd. 6.)

The petitioner-respondent in the instant case (hereinafter called respondent) is engaged in the business of collecting and

compiling information and statistics concerning present economic, political and labor conditions affecting commerce, finance and industry, as well as forecasts and predictions of trends and future conditions. This information is disseminated to subscribers in part by mail through the medium of two publications, issued at regular periods, under the titles " Babson's Washington Service " and " Babson's Business Service ".

The comptroller of the City of New York has determined that respondent's receipts from subscriptions to these publications are receipts from sales of " tangible personal property ". The comptroller has further determined that these publications are not excluded from coverage under the sales tax as newspapers or periodicals. Accordingly, since respondent did not charge or collect any sales tax from its subscribers, the comptroller concluded that respondent is liable for the payment of such taxes based on sales in the city of New York from 1935 to 1944. A " Final Determination " assessing a deficiency of $2,606.54 against respondent was then issued. Respondent procured an order referring the matter to the Appellate Division for a review of the comptroller's determination in accordance with article 78 of the Civil Practice Act. That court, with two Justices dissenting, annulled the determination of the comptroller on the law and ordered the repayment of certain sums previously deposited with the comptroller.

The facts are undisputed. Respondent is a foreign corporation with its principal place of business in Massachusetts where it maintains its offices and prints the two publications above mentioned. Subscribers in New York City receive them by mail. " Babson's Washington Service ", also called " Babson's Washington's Reports ", contains a subtitle reading " Confidential Forecasts of Coming Developments ". It is published weekly and consists of four pages of printed matter.

" Babson's Business Service ", also called " Babson's Reports ", consists of three parts, the contents of which are indicated by their titles (1) " Business Management — Sales and Wage Forecast ", (2) " Business Inventory — Commodity Price Forecast ", and (3) " Confidential Barometer Letter ", also called " Timesaver for Corporation Presidents ". The first two parts of the " Business Service " are issued monthly and each contains ten pages. The third part is issued weekly and consists of four pages.

Subscribers to the " Washington Service " and the " Business Service " may avail themselves at any time of advisory or consultation privileges, i.e., they may obtain from respondent additional and specialized information concerning their particular problems and individual needs. These advisory privileges do not exceed 5% of the total editorial work of respondent's staff in the case of either publication. All of respondent's subscription blanks and publicity booklets for the " Washington Service " and the " Business Service ", as well as the publications themselves, contain, in various forms, recitals to the effect that the material contained in the publications is to be treated " as confidential " or " in strict confidence for the use only by subscribers and by those who secure this material thru authorized sources ".

For reasons presently to be stated, we think the order of the Appellate Division annulling the determination of the comptroller must be affirmed on the ground that respondent's publications are " periodicals " within the meaning of schedule " A " and are thus outside the coverage of the local sales tax law. The two dissenting Justices in the Appellate Division, who voted to confirm the comptroller's determination, cited and relied upon our decision in *Matter of Moody's Investors Service* v. *McGoldrick* (280 N. Y. 581). That case, however, is not applicable here. There, the publisher, Moody's, collected and compiled statistical information concerning corporate securities and printed the results in a series of publications, each devoted to a different class of security. The publications took the form of (a) pamphlets issued in most cases twice a week which contained current information concerning dividends, financial reports and other matters of interest to subscribers; and (b) a bound reference book or manual, issued at the end of the year, which integrated the information contained in the pamphlets published during the year. Subscribers contracted to receive the desired pamphlets during the year and Moody's agreed to give each subscriber at the end of the year a copy of the appropriate integrating manual " free ". The publications were copyrighted in the United States Copyright Office as " books ". No personal services were offered or given by Moody's in connection with the sale of the publications. We there held that the pamphlets issued by Moody's should be regarded as publi-

cations at regular intervals of parts of the reference book or manual furnished to subscribers at the end of the year. Thus, in effect, the transaction was one for the sale of such manuals, and the single subscription price was subject to the city sales tax as a receipt from the sale of tangible personal property. The reference books or manuals were clearly finished products, freely transferrable and having an independent market value in the hands of the purchaser disassociated from any personal and individual services rendered by the seller. These books or manuals were held taxable even though they were the *product* of services, i.e., specialized and extensive investigation, evaluation and research prior to publication, for the subscriber purchased the finished book and not the services which went into its publication. Moreover, as indicated, the weekly pamphlets in the *Moody* case (*supra*) did not come within the category of " periodicals ", not subject to the tax, because they were merely publications at regular intervals of component parts of the reference book or manual issued at the end of the year. In short, the *Moody* case simply sanctioned the taxability of receipts from the sale of such reference books or manuals.

An entirely different situation is presented in the instant case. The publications here involved can not in any sense be regarded as books or parts thereof. They impress us rather as " periodicals " within the meaning and intent of that word as used in schedule " A " of subdivision a of section N41–2.0 of the Administrative Code. The word " periodical " is not defined in the local law here under consideration and we find no such definition in the statutory or decisional law of this State. In that situation, we adopt the test of common understanding. " A tax law should be interpreted as the ordinary person reading it would interpret it." (*Howitt* v. *Street & Smith Publications,* 276 N. Y. 345, 351.)

Newspapers, magazines and periodicals are all vehicles for the transmission of news, opinions, ideas, information and literature. They have the common elements of periodicity, general availability to the public, and continuity as to title and general nature of content from issue to issue. They do not usually possess a substantial and permanent binding and the writings contained therein are customarily the product of an editorial staff rather than a single author. Exact definition

is difficult, but we entertain no doubt that respondent's publications would commonly be classified, in popular speech, as "periodicals", and that when the phrase "newspapers and periodicals" was used in schedule "A", it was used with the common and popular understanding of the words.

We are referred to certain technical distinctions between newspapers and periodicals on the one hand, and books on the other, which have been found necessary in the administration of our Federal copyright and postal systems, and the attempts at definition which have been made with respect to those fields by statute, regulation and judicial opinion. These expressions, of course, were written in the light of the special problems and needs of those fields, and are not conclusive on the question of what constitutes a periodical within the meaning of the local sales tax law here involved. To some degree, however, these expressions have entered our speech and thought and have influenced the common understanding of the word "periodical". Accordingly, they shed some light on our present problem.

Respondent's "Washington Service" and "Business Service" were actually classified in the United States Copyright Office, under subdivision (b) of section 5 of title 17 of the United States Code, as "periodicals". This action was taken despite the fact that the Copyright Office regulations provide that "Serial publications which are not clearly 'periodicals' should be registered as books". (See Code of Fed. Reg., tit. 37, § 201.4, subd. [b], par. [2].) In this connection, the case of *Houghton* v. *Payne* (194 U. S. 88) assumes importance in the instant case because the comptroller of the City of New York has adopted a quotation therefrom in his regulations as the definition of a periodical for sales tax purposes. In the *Houghton* case (*supra*) the Supreme Court held that the publication of certain novels and collections of short stories in a form which technically complied with the requirements of sections 10 and 14 of the Postal Law (U. S. Code, tit. 39, §§ 224, 226) was nevertheless a patent device by the publishers to secure postal privileges at the periodical rate instead of the book rate, and that the publications were in truth books and not periodicals. In the course of its opinion, the court said (p. 97): "A periodical, as ordinarily understood, is a publication appearing at stated intervals, each number of which contains a variety of original

articles by different authors, devoted either to general litera-
ture of some special branch of learning or to a special
class of subjects. Ordinarily each number is incomplete in
itself, and indicates a relation with prior or subsequent numbers
of the same series. It implies a continuity of literary character,
a connection between the different numbers of the series in
the nature of the articles appearing in them, whether they be
successive chapters of the same story or novel or essays upon
subjects pertaining to general literature. * * * '' This quo-
tation is now embodied in article 44 of the comptroller's rules
and regulations for the city sales tax. Under the tests sug-
gested in the quotation, the respondent's publications are
clearly '' periodicals '' especially when it is recalled that the
word '' literature '' in this context means '' no more than pro-
ductions which convey ideas by words, pictures, or drawings.''
(*Hannegan* v. *Esquire, Inc.,* 327 U. S. 146, 153.) Respondent's
publications appear at stated intervals; they contain a variety
of original articles by different, though unnamed, authors; they
are devoted to a special class of subjects; they are incomplete
in themselves and indicate a relation to prior and subsequent
issues and they have a continuity of literary character.

The city's only serious contention in this court upon this
point is that respondent's statement to subscribers that the
material contained in its publications should be treated '' in
strict confidence '' or '' as confidential '' deprives such publica-
tions of the character of '' periodicals '' within the meaning of
the local sales tax law. Respondent's publications, of course,
were actually intended for general circulation in the sense that
any member of the public with the inclination and available
funds could subscribe to them. It may be conceded, however,
that the word '' periodical '' commonly implies that the publi-
cation so characterized is not only generally available to the
public but also contains information of a public character. But
we do not think that respondent's admonition that the informa-
tion contained in its publications was '' confidential '' was
literally effective to forbid the normal use and public expression
of such information by individual subscribers. The restriction,
in practical effect, seems merely to be a prohibition against
competing and contemporaneous publication of the information
contained in the reports, i.e., a prohibition against pirating the

contents of the reports. It appears to be a precautionary notice to supplement respondent's copyright protection, and probably was intended to have certain incidental promotional and advertising value in stimulating sales of subscriptions. At any rate, we do not feel that the quoted statement that the material contained in the publications is " confidential " deprives them of the character of periodicals within the intent and meaning of the local sales tax law.

Furthermore, it should be noted that if we were to accord to the restriction the literal effectiveness argued for by the city, then cogent argument could be advanced that subscriptions to the publications are not sales of " tangible personal property ", for in that event, the publications would have no independent market value in the hands of the subscriber and he would not be able to transfer them nor divulge their contents. Instead of being the subject of a sale of tangible personal property, the actual printed publications would really be an incidental part of a transaction involving the private communication of specialized knowledge to individual clients, accompanied by the rendition of personal and direct services on the part of respondent. In that view, the case would be akin to *Dun & Bradstreet* v. *City of New York* (276 N. Y. 198) and *Stampers Arrival of Buyers* v. *City of New York* (296 N. Y. 574) cases in which transactions essentially calling for the rendition — in exchange for a stipulated consideration — of personal services were not considered to be sales of tangible personal property merely by reason of the fact that as a necessary incident thereto the subscriber received and retained printed matter of no independent or market value. There is no need to pursue these observations further, however, for, as indicated, we hold that the statement that the published material was " confidential " is not sufficient to destroy the character of the publications as " periodicals " within the meaning of schedule " A " and accordingly that receipts from their sale are not subject to the city sales tax.

It is also proper to note that we do not believe that the serious constitutional difficulties, mentioned in the opinion of the Appellate Division and strenuously argued by respondent here, are actually present in the case. If we were to construe the local sales tax law as vesting in the comptroller the power to make a determination as to whether a disputed publication was or was not a periodical based upon his conception of the cultural or

social value of the contents or purposes of such publications, that might in effect be granting to the comptroller a limited right of censorship and might pose a problem of constitutional law. (Cf. *Hannegan* v. *Esquire, Inc., supra.*) Of course, we have not and do not now so construe the local law, and, as the opinion below concedes, the comptroller did not base his determination in the instant case on any such theory. Apart from that possibility, we see no constitutional question here present. Like other businessmen and their products, publishers and their publications may constitutionally be subject to a general tax or regulatory statute which does not purport to censor or to discriminate against them. The case of *Grosjean* v. *American Press Co.* (297 U. S. 233) cited by respondent and the court below, involved a tax clearly different from the one at bar. There, as stated in *Mabee* v. *White Plains Pub. Co.* (327 U. S. 178, 184) " * * * the press was singled out for special taxation and the tax was graduated in accordance with volume of circulation." See, to the same effect, *Oklahoma Press Pub. Co.* v. *Walling* (327 U. S. 186, 192–194.) Compare also the express reservation in the *Grosjean* case (*supra,* at p. 250), with *Giragi* v. *Moore* (49 Ariz. 74, appeal dismissed 301 U. S. 670), and *Arizona Pub. Co.* v. *O'Neil* (22 F. Supp. 117, affd. 304 U. S. 543).

The other points argued in the briefs do not warrant extended discussion. In view of our decision that the comptroller's determination and deficiency assessment were properly annulled, respondent's contention that a portion of such assessment was barred by a special statute of limitations is of no moment. We also agree with the holding of the Appellate Division that respondent is entitled to the repayment of the sum of $403.96, as against the city's contention that said sum was paid by respondent voluntarily and without protest. That amount was paid by a check dated January 18, 1943, and drawn, at the city's request, in place of a previous check in the same amount which had been sent by respondent but never cashed by the city. We think that the protest which had accompanied the previous check was sufficient to cover the subsequent check sent in its stead.

The order should be affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS, DESMOND, DYE, FULD and BROMLEY, JJ., concur.

Order affirmed.