James Gibson, J.
This proceeding, brought pursuant to article 7 of the Real Property Tax Law to review a tax assessment, was tried on December 16, 1975 at Chambers at Hudson Falls pursuant to order of the court (CPLR 512) and to stipulation of the parties (CPLR 4013) and was finally *417 submitted (CPLR 4213, subd [c]) on January 29, 1976 with the filing of intervenor-respondent’s brief.
The issues arise upon petitioner’s contention that the assessment is illegal to the extent that it includes the value of certain ski lifts allegedly exempt from taxation (Real Property Tax Law, § 102, subd 12, par [f]). At the outset of the trial, the court, with the consent of counsel, directed that the issue of exemption be first heard and determined and that, in the event of a decision favorable to petitioner, the resultant issue of overvaluation be then tried and determined.
The statutory provisions which are relevant here in that they define "real property” subject to taxation, as well as the certain exemptions and exclusions upon which this case turns, are these:
"12. 'Real property’, 'property’ or 'land’ mean and include: * * *
"(b) Buildings and other articles and structures, substructures and superstructures erected upon, under or above the land, or affixed thereto * * *
"(f) Boilers, ventilating apparatus, elevators, plumbing, heating, lighting and power generating apparatus, shafting other than counter-shafting and equipment for the distribution of heat, light, power, gases and liquids, but shall not include movable machinery or equipment consisting of structures or erections to the operation of which machinery is essential, owned by a corporation taxable under article nine-a of the tax law, used for trade or manufacture and not essential for the support of the building, structure or superstructure, and removable without material injury thereto” (Real Property Tax Law, § 102, subd 12, pars [b], [f] emphasis supplied).
The case was previously before the court at Special Term upon a motion to dismiss because of petitioner’s failure of compliance with section 706 of the Real Property Tax Law and rule 839.3 of the Rules of the Appellate Division, Third Department (22 NYCRR 839.3) and upon petitioner’s cross motion for summary judgment on the basis of the asserted exemption under the Real Property Law (§ 102, subd 12, par [f]).
At the Special Term, Mr. Justice Hakvey denied the motion to dismiss, holding: "that until there is a determination of the Court as to what portion of the entire property is taxable, appraisal reports would be premature and their expense *418 should be avoided if not necessary. Those may be ordered by the trial court after its determination of the primary issue— the legality of the inclusion of these improvements.”
In denying petitioner’s cross motion for summary judgment, Special Term held: "Until there is a determination as to whether the structures are real or personal property, within the meaning of RPTL § 102-12 (b) it would also be premature to determine if they would fit into the § 102-12 (f) exemption for certain corporations taxable under Article 9-A of the Tax Law.”
The rule was then stated by Mr. Justice Harvey as follows: "The determination whether an improvement is taxable as real property pursuant to RPTL § 102-12 (b) is made by a three prong test — (1) the article must be actually annexed to the realty or something appurtenant thereto; (2) the article must have been adapted to the use or purpose to which that part of the realty with which it is connected is appropriated; and (3) the party installing the article must have intended to make a permanent accession to the freehold. People v. National Starch Mfg. Co., 26 A. D. 527 (2nd Dep’t 1898); People ex rel New York Edison Co. v. Wells, 135 A. D. 644 (1st Dep’t. 1909) aff’d mem. 198 N. Y. 607 (1910); Marine Midland Trust Co. v. Ahern, 16 N.Y.S. 2d 656 (Sup. Ct. Broome Co. 1939).”
Expanding upon the issue of intent to permanently annex, the court said: "Because permanence is primarily a matter of intention, it would appear that each party should have an opportunity to introduce evidence such as the usual and ordinary practices in the skiing industry which would bear upon the intention of the owner. Because there are unresolved questions of fact, a plenary trial is required.”
Upon the trial, petitioner adduced testimony from its president and general manager, Michel R. Brandt, and from an equipment broker, Hugh Knapp. The respondents rested at the close of the petitioner’s case without having introduced any evidence.
The corporate petitioner owns and operates West Mountain Ski Center in Warren County. Succinctly describing the business, Mr. Brandt testified: "Well, we provide uphill transportation for our customers. We sell them a ride, conveyance up the mountain for the skiing.” Petitioner would thus bring its business within a broad definition of "trade”, as the term appears within the exclusionary provisions of paragraph (f), rather than the narrow and restricted definition of "trade” for *419 which, as will hereinafter appear, the respondents contend— that is, the business of buying or selling "tangible” personal property.
The facility operates four lifts: a rope tow, a one-passenger chair lift, a two-passenger chair lift and a three-passenger chair lift. A ski lift of the chair type is a conveyor whereby skiers are transported uphill in chairs suspended from an endless cable which is activated by an engine with appropriate drive shafts and gears. The cable passes through sheaves or rollers upon towers bolted to concrete foundations set in the ground. The engine is either bolted to a concrete foundation or mounted on a carriage which rides on rails.
Petitioner does not argue that its ski lift installation would not — except for the exclusionary or exemptive provisions of paragraph (f) — qualify as real property by statutory definition generally and under the tests imposed by decisional law, as very likely it would.[1] The question is academic, however, in the light of the conclusion, hereinafter stated, that the property is, in any event, within the statutory exemption.
That conclusion follows a close examination of the exemption statute and its history. Respondents contend at the outset that petitioner’s ski lifts are not "used for trade or manufacture” within the paragraph (f) provision and hence do not qualify for exemption, because, in respondents’ view, "trade” can be only the buying or selling of "tangible personal property”, and this by definition, not of "trade”, but of the business of a "mercantile corporation” as defined by a statute repealed in 1918.[2] This circuitous contention requires a back track to the original franchise tax article 9-A as constituted in 1918.
As initially constituted by the enactment of article 9-A of the Tax Law, a franchise tax was imposed on "every domestic manufacturing and every domestic mercantile corporation” (Tax Law, § 209, per L 1917, ch 726, § 1, as amd by L 1918, ch 276). Indeed, article 9-A was then entitled "Franchise Tax on *420 Manufacturing and Mercantile Corporations”. The term "mercantile corporation” was, by the same 1917 act, defined as "a corporation principally engaged in the business of buying or selling tangible personal property for itself or for others” (Tax Law, former § 208). However, the act was shortly (1919) amended so as to impose the franchise tax on "every domestic corporation”, the references to "manufacturing” and "mercantile” corporations were omitted, and article 9-A was accordingly re-entitled "Franchise Tax on Business Corporations” (L 1919, ch 628). Significantly, the section 208 definitions of "manufacturing” and , "mercantile” corporations had been deleted (L 1918, ch 417) a year before the extension of the taxing act to domestic corporations generally and the consequent deletion of references to manufacturing and mercantile corporations.
In 1918, section 219-1 included a limited definition of "personal property” for purposes of exemption from local taxation (L 1918, ch 271); but the broad 1919 amendments (L 1919, ch 628, supra), extending the coverage of the franchise tax to "every domestic corporation” and omitting reference to "mercantile” corporations, also effected a substantial revision of section 219-1[3] and included therein, for the first time, the clause "movable machinery and equipment used for trade or manufacture” (L 1919, ch 628, § 14; emphasis supplied) and other language now in the Real Property Tax Law (§ 102, subd 12, par [f]). The interpretation of the underscored language, and of the word "trade” in particular, is one of the issues posed by the case at bar.
It is to be noted, of course, that the clause "used for trade or manufacture” (Tax Law, former § 219-1; and present Real Property Tax Law, § 102, subd 12, par [f]) was added to article 9-A at the same time that there were deleted from it the provisions limiting its application to "manufacturing” and "mercantile” corporations (L 1919, ch 628, §§ 3, 14).[4] Research fails, however, to disclose anything in the statutes or any history extrinsic to them that would sustain a contention that *421 the newly (1919) added phrase "trade or manufacture” should be narrowly construed — insofar as "trade” is concerned — in the light of the previously (1918) repealed definition of a "mercantile” corporation as one in the "business of buying or selling tangible personal property” (Tax Law, former § 208).
Respondents claim support for their theory that the original definitions somehow survived their explicit repeal in 1918, in a holding by the Court of Appeals that the repeal of the pertinent provisions of the Tax Law and their simultaneous re-enactment in section 102 (subd 12, par [f]) of the new Real Property Tax Law did not "change the definition or classification of real property subject to the real property tax or set any new standards or criteria for determining the taxable status of such property” (Matter of City of Lackawanna v State Bd. of Equalization & Assessment of State of N. Y., 16 NY2d 222, 228), a conclusion which, as the court noted, the statute itself expressed. But no basis exists for reading into the language cited by respondents the conclusion that any "definition or classification” deleted 40 years before the 1958 recodification was thereby unaccountably revived or that the terms "trade or manufacture” appearing for the first time in 1919 were to be construed in the light of the definitions of "manufacturing” and "mercantile” corporations deleted one year before.
It being clear, then, that in the search for the true meaning of "trade”, recourse cannot properly be had to the long outmoded definition of the collateral term "mercantile”, independent sources must be sought. The term "trade” seems not to have been judicially interpreted in the context of paragraph (f). As would be expected, however, it has been construed in various other settings.
"Trade is 'business of any kind;’ 'dealing;’ 'any occupation or employment pursued as a calling;’ 'the business which a person has learned, and which he engages in, for procuring subsistence, or for profit.’ ” (People ex rel. Whitney v Loughman, 220 App Div 30, 32, citing Webster’s New International Dictionary; and see Webster’s Third New International Dictionary, p 2421.) The Court of Appeals adopted an equally broad definition: "Moreover, it is well settled that a 'tax law should be interpreted as the ordinary person reading it would interpret it.’ (Howitt v. Street & Smith Pub., 276 N. Y. 345, 351; Matter of Business Statistics Organization v. Joseph, 299 N. Y. 443, 449.) Common words are to be given their commonly *422 understood meaning unless another meaning is obviously intended (see McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 232). Since there is nothing in the Gross Receipts Tax to suggest — even remotely — that the lawmakers intended to confer a special or restricted meaning on the terms therein used, we may look to the legal dictionaries for the generally accepted common definition of such terms. The word 'trade’ has the broad definition of 'Any sort of dealings by way of sale or exchange; commerce, traffic.’ (Bouvier’s Law Dictionary [8th ed.], vol III, pp 3290-3291.)” (Matter of Steinbeck v Gerosa, 4 NY2d 302, 308.) Dealing with the Internal Revenue Code, the United States Court of Appeals, Second Circuit, said: "The phrase 'trade or business’ has a common and well-understood connotation as referring to the activity or activities in which a person engages for the purposes of earning a livelihood. See Daily Journal Co. v. Commissioner, 9 Cir., 1943, 135 F.2d 687. Absent controlling precedents requiring a contrary conclusion, we would feel constrained to give 'trade or business’ its more usual broadly-inclusive meaning.” (Folker v Johnson, 230 F2d 906, 907.)
Clearly, then, petitioner’s commercial ski lift operation is a business engaged in for profit, and its ski lift equipment is "used for trade”. Its officer’s testimony (supra) that, "We sell [our customers] a ride, conveyance up the mountain for the skiing” is accurate and brings the business enterprise within the compass of the ordinary, sensible and practical definition of "trade”.
Having concluded that petitioner’s ski lift machinery and equipment are "used for trade”, the additional paragraph (f) tests remain to be applied; that is, whether constituting (a) "movable machinery or equipment”; (b) "consisting of structures or erections to the operation of which machinery is essential”; (c) "owned by a corporation taxable under article nine-a of the tax law”; (d) "and not essential for the support of the building, structure or superstructure”; and (e) "removable without material injury thereto” (Real Property Tax Law, § 102, subd 12, par [f]).
The evidence, consisting of testimony and exhibits, that the machinery and equipment were indeed (a) movable and (e) removable without material injury to any building, to the land or to the structures themselves, was not contradicted by any explicit, factual proof. The most impressive elements of petitioner’s proof were not merely the testimonial conclusions *423 that the equipment was, in terms of the statute, "movable” and "removable without material injury”, but the uncontradicted evidence that petitioner’s equipment actually had been moved and removed; certain of the lifts, in use by other owners at other and relatively distant sites, having been purchased in place by petitioner and removed to and installed upon petitioner’s West Mountain site and certain of petitioner’s lifts in use at West Mountain having been replaced and sold for installation elsewhere. Thus, the first two lifts used by petitioner at West Mountain were sold, after two or three years’ use there; one to Norwich University which reinstalled it in Vermont, and the other to a ski center whose name the witness did not recall. Petitioner purchased, disassembled, removed and reinstalled two of the lifts involved in this case: acquiring from the Whiteface Mountain Authority a single-chair lift then in use at Marble Mountain, and another lift from a source not named. Petitioner’s witness, Knapp, a broker dealing in ski lift equipment, said that there is most definitely a market for used lifts, that he was actively negotiating a number of contracts for used lifts and had listed with him almost $500,000 worth, or some 20 units, of used lifts.[5]
The conclusion that the ski lift equipment was indeed both "movable” and "removable without material injury”, within the intent of the statute, is strongly fortified by the decision of the Appellate Division, Third Department, in Matter of Martin v Gwynn (18 AD2d 851; and see, also, Matter of Tri-County Asphalt & Stone Co. v Board of Assessors of Town of Kingsbury, 17 Misc 2d 437).[6] In Martin, gravel pit machinery and equipment constituted a type of conveyor operation markedly similar to that with which the instant case is concerned. *424 Crushers were fastened to a concrete foundation by anchor bolts and a scréen was mounted on steel columns fastened by anchor bolts to a similar foundation, while conveyors were supported by columns fastened to a concrete foundation. In the case at bar, the towers were attached by long bolts set into poured concrete foundations and the removal process, simply enough, involved no more than the cutting and severance of the bolts to permit the towers, to be lowered gently to the ground and trucked to the new site.
The remaining elements of the paragraph (f) test may be dealt with in short order. Obviously, "machinery is essential” to the operation of the lifts (see "[b]”, above); that petitioner is an article 9-A corporation (see "[c]”, above) was stipulated; and, clearly, the ski lift equipment, being free standing, was "not essential for the support of [a] building” or other structure (see "[d]”, above).
The ski lift machinery and equipment here found to be within the paragraph (f) exemption do not include the concrete footings or foundations (cf. Tri-County, 17 Misc 2d 437, 438, supra); and thus some testimony in respect of evaluation becomes necessary. To that extent this decision will, of course, be deemed interlocutory; and counsel are requested to confer and thereupon to communicate with the court to fix a trial date.

. This does not, however, approve respondents’ unpersuasive argument that ski lifts are "elevators” within the meaning of the first clause of paragraph (f), when read in context and as one of several items constituting building fixtures, i.e., "Boilers, ventilating apparatus, elevators, plumbing, heating, lighting and power generating apparatus” (and cf. L 1918, ch 271, § 3, adding a new § 219-1, the precursor of the present par [f], clearly referring to "elevators” in buildings).

. This is also the theory of an article, "Classification of Property for Taxation Purposes under the Real Property Tax Law”, by Mary E. Mann, Associate Attorney, New York State Board of Equalization and Assessment (1970), p 19.

. "The term 'personal property,’ for the purposes of the exemption from assessment and taxation thereon locally as granted by section two hundred and nineteen-j of this chapter, shall include any movable machinery and equipment used for trade or manufacture and not essential for the support of the building, structure or superstructure, and removable without material injury thereto” (Tax Law, former § 219-1, as amd L 1919, ch 628, § 14).

. As hereinbefore noted, the definitions of manufacturing and mercantile corporations had been deleted the year before (L 1918, ch 417).

. Not only did this expert’s unrefuted testimony convincingly support the claims of movability and removability without material injury but it served to indicate, within the lines of Justice Harvey’s decision (supra, p 418), "the usual and ordinary practices in the skiing industry which would bear upon the intention of the owner” [as to permanent annexation], as it is reasonably inferable that purchases and installations would normally be made in the expectation of subsequent trade-ins should the business prosper and improved models appear on the market.

. The distinction urged by respondents as between the Martin and the Tri-County cases and this — that knowledge of the eventual depletion of the supply of raw material would negate the claim of an intent to permanently annex the machinery— is not well founded, both cases having been determined solely on the basis of the paragraph (f) exemption, the Appellate Division explicitly stating in Martin (p 852): "There can be little doubt that on general principles of law this plant would be treated as real property [citations]. But by operation of a special statute [paragraph (0] * * * the plant must be treated as personal property” (emphasis supplied).