OPINION OF THE COURT
Elizabeth W. Pine, J.
The instant case is before the court on cross motions for summary judgment pursuant to CPLR 3212.
Plaintiff Research Institute of America, Inc. (RIA) commenced this action seeking a declaratory judgment that certain of its publications are "periodicals” within the meaning of section 1115 (subd [a], par [5]) of the Tax Law and exempt from the State sales tax imposed by section 1105 of the Tax Law and the State compensating use tax imposed by section 1110 of the Tax Law, and further seeking injunctive relief against the assessment of sales or compensating use tax in connection with the particular RIA publications at issue herein.
On August 3, 1977, a "Notice of Determination and Demand for Payment of Sales and Use Taxes Due” (No. 90741352) demanding payment of $119,299.46 was issued to plaintiff, covering the period between December 1, 1973 and November 30, 1976.
In the ordinary case, and as a matter of law, a person who is required to collect State sales tax is accorded "the same right in respect to collecting the tax from his customer or in respect to nonpayment of the tax by the customer as if the tax were a part of the purchase price * * * and payable at the same time”. (Tax Law, § 1133, subd [a].) However, as a practical matter, due to the retroactive nature of the assessment in *245 this case, plaintiff alone, rather than its subscribers, would be compelled to bear its full weight.
On October 20, 1977, pursuant to 20 NYCRR 601.3, plaintiff requested a hearing to determine the sales and use tax claimed. More than one year later, it does not appear that any hearing has yet been scheduled by defendants pursuant to this request.
Some five months after plaintiff’s request for a hearing went unheeded, plaintiff commenced this action for declaratory and injunctive relief. Prior orders of this court have denied defendant’s subsequent motions, in this action, to dismiss the complaint (Livingston, J., filed Aug. 29, 1978), to secure a further extension of its time to answer (White, J., filed Sept. 26, 1978), and to change the venue of this action to Albany County (Siracuse, J., filed Oct. 6, 1978). Issue having been joined, plaintiff and defendant now cross-move for summary judgment.
Through a clerical error, sample copies of the publications here at issue (which the complaint recited were annexed to it) were not furnished to counsel for defendant until August, 1978, which was more than two months before plaintiff made the instant motion for summary judgment. On the instant motion, an affidavit from counsel at the Law Bureau of the Department of Taxation and Finance (who does not dispute that the copies were received) urges that plaintiffs failure to annex the exhibits to its complaint made it "impossible” for defendant to respond to this summary judgment motion, and that "since the publication^] referred to in plaintiffs affidavits were not included in the pleading, they may not be considered on this motion.” First, this contention is erroneous. (CPLR 3212, subd [b].) Second, this court clearly has the power to permit a mistake or omission to be corrected upon such terms as may be just, and orders that the exhibits furnished to counsel for the defendant be deemed annexed to and incorporated in the complaint in this action. (CPLR 2001.)
I. FACTS
Three subscription items published by RIA are at issue in this case.
A. WEEKLY ALERT
The first, Weekly Alert, is an eight-page weekly publication *246 with a circulation of some 25,000. Each issue consists of approximately a dozen articles concerning recent tax developments, and includes editorial commentary and recommendations. Weekly Alert has been sold, in one form or another, for decades. At no time until defendants’ retroactive 1977 audit, and in fact at no time during the 12 proceeding years that the New York sales and use taxes had been in effect, did defendant ever claim either sales or use tax from plaintiff in connection with this RIA publication.
The court notes also that, for mailing purposes, RIA has been issued a permit authorizing it to mail Weekly Alert at the second class rate, on the ground that it is a "periodical”. Further, RIA has been authorized to defer the recognition of subscription income for Weekly Alert, on the ground that it constitutes a "periodical” within the meaning of the Internal Revenue Code (US Code, tit 26, § 455).
B. ESTATE PLANNERS ALERT
This publication has the same format as Weekly Alert, except that it is geared to estate planners rather than to tax practitioners, is slightly larger in size, has several more articles per issue, and is published monthly rather than weekly. Publication of Estate Planners Alert was commenced in 1976; this publication now has a circulation of some 4,000. Like Weekly Alert, it is mailed as a "periodical” at the second-class rate, and is eligible for deferred recognition of prepaid subscription income as a "periodical”. Defendant did not claim any sales or use taxes due concerning this publication until the issuance of its retroactive audit in 1977.
C. EXECUTIVE MEMBERSHIP
The Executive Membership includes several interrelated publications designed primarily for the business community, and has a circulation of some 10,000. Executive Membership entitles the subscriber to receive some five separate publications: Alert, a weekly publication similar in size and format to Weekly Alert, but focusing on business ideas, methods and trends (since July 5, 1978, issued as three separate components [Alert, Regulatory Alert and Tax Alert]); Research Institute Report, a four-page weekly, reporting upon and interpreting government actions and economic developments for the business community; Economic Outlook, a quarterly *247 publication providing in-depth reporting on economic developments; Staff Recommendations, a publication devoting each issue to a series of articles dealing with a common topic or theme of interest to businessmen; and Selectron, an index to prior Staff Recommendations. RIA has mailed Executive Membership publications via first class mail; they have, however, been determined eligible for deferred recognition of prepaid subscription income, as a "periodical”. Although the Executive Membership has been published, in one form or another, for decades, defendant did not claim any sales or use tax due in connection with this RIA subscription until the issuance of their retroactive audit in 1977.
II. THE LEGAL ISSUES
Defendant, since making its initial claim, in 1977, for sales and use taxes in connection with plaintiffs previous sales of the above publications, has adopted the view that the subject publications constitute information services subject to the sales tax imposed by section 1105 (subd [c], par [1]) of the Tax Law. Defendant concedes, however, that the subject publications would be exempt from both the State sales tax (Tax Law, § 1105, subd [c], par [1]) and the alternative State compensating use tax (Tax Law, § 1110) if they were "periodicals” within the meaning of section 1115 (subd [a], par [5]) of the Tax Law.
Since the creation of the State sales and compensating use tax in 1965 (Tax Law, art 28), the rule-making function established by sections 171 and 1142 of the Tax Law for the most part has been carried out. (See, e.g., 20 NYCRR Part 528 interpreting statutory exemptions codified at Tax Law, § 111.)
There is, however, a conspicuous exception. While a virtual item-for-item correlation now exists between the statutory exemptions appearing in subdivision (a) of section 1115 of the regulations interpreting that statute (20 NYCRR Part 528), there is still no regulation construing the statutory exemption for newspapers and periodicals (Tax Law, § 1115, subd [a], par [5]). In fact, a specific number appears to be reserved for this still-unpromulgated regulation (see 20 NYCRR 528.6). The mere reservation of a number, however, for an as-yet-unarticulated regulation defining "newspapers and periodicals” provides little guidance to the potential taxpayer who, upon reading 20 NYCRR 527.3 (sale of information services), locates the cross reference to this phantom authority: "Cross reference: Periodicals and newspapers, see Part 528 of this Title.”
*248 The issue before this court is a narrow question of law: given the consistent past treatment of sales of the subject publications as nontaxable events under our State sales and use tax laws, and absent any valid rule or regulation interpreting the one-word statutory exemption for periodicals, whether the subject publications in this case should be held taxable, as information services, or nontaxable, as periodicals.
The parties rely heavily upon Houghton v Payne (194 US 88). The issue in that case was whether certain publications were eligible for mailing at a reduced second-class rate, or instead subject to a substantially higher third-class rate. Houghton turned upon a construction of the Post Office Appropriation Bill of March 3, 1879 (20 US Stat 355, 359). This legislation provided, at section 10, that certain periodical publications were eligible for the second-class rate. The statute further expressly provided, in section 14:
"That the conditions upon which a publication shall be admitted to the second class rate are as follows:
"First. It must regularly be issued at stated intervals, as frequently as four times a year, and bear a date of issue, and be numbered consecutively.
"Second. It must be issued from a known office of publication.
"Third. It must be formed of printed paper sheets, without board, cloth, leather or other substantial binding, such as distinguished printed books for preservation from periodical publications.
"Fourth. It must be originated and published for the dissemination of information of a public character, or devoted to literature, the sciences, arts or some special industry, and having a legitimate list of subscribers”.
In Houghton, the court held that, while the publications there at issue did meet each of the general requirements of section 14, it simply could not be said that the publications at issue in that case (each containing a single novel or story, or a collection of short stories or poems by the same author, and most if not all consisting of reprints of standard works by Thackeray, Whittier, Lowell, Emerson, Irving, or other well-known writers) were periodicals, rather than books.
First, in the instant case, there is no counterpart to the statutory provisions of section 14 applicable in Houghton. The only legislative guidance available, in this case, is the bare *249 language of section 1115 (subd [a], par [5]) of the Tax Law providing that "periodicals” are exempt from sales and use taxes. Moreover, defendant has failed to promulgate any valid interpretive rules or regulations construing this statutory term.*
Where, as here, there exists no articulated legal definition of "periodicals,” the court adopts the test of common understanding — under which "[e]xact definition is difficult” (Business Statistics Organization v Joseph, 299 NY 443, 449-450). That standard is set out in the Business Statistics Organization case, and the court finds that the publications here at issue are substantially within it. It is a settled rule of construction that ambiguities in the tax laws must be construed in favor of the taxpayer and against the taxing authority (see, e.g., Quotron Systems v Gallman, 39 NY2d 428; Matter of Brodsky v Murphy, 26 AD2d 225; McKinney’s Cons Laws of NY, Book 1, Statutes, § 313, subd c), and that statutes must be construed to avoid an unjust result (McKinney’s Cons Laws of NY, Book 1, Statutes, § 143, pp 289-290; see, generally, § 60). Of course, in the case of exemptions, the burden of establishing the right to the exemption is on the party claiming it (Matter of Schwartzman, 262 App Div 635, affd 288 NY 568). However, under this rule, plaintiff, in the absence of any *250 regulation implementing section 1115 (subd [a], par [5]) of the Tax Law, can only be required to prove that the subject publications were "periodicals” as that term is generally understood. Prior decisions finding various other publications not to be periodicals are distinguishable; the publications here at issue are not novels, stories or collections of short stories or poems by the same author (cf. Houghton v Payne, 194 US 88, supra), nor are they mere compilations of statistics or other financial data (cf. Matter of Moody’s Investors Serv. v McGoldrick, 254 App Div 726, affd 280 NY 581), nor do they merely solicit commerical transactions rather than disseminate news or information (cf. Matter of G & B Pub. Co. v Department of Taxation & Fin., Sales Tax Bur., 57 AD2d 18, mot for lv to app den 42 NY2d 807; see L 1977, ch 884, § 2, extending the exemption).
Under the circumstances of this case, plaintiff is entitled to summary judgment declaring that, in the absence of and pending the promulgation of a valid interpretive rule or regulation construing the statutory exemption for periodicals, the subject publications do constitute periodicals exempt from the State sales and use tax pursuant to subdivision (a) of section 1115 of the Tax Law. The obligation to collect sales tax from subscribers to a publication should be precise and not speculative. This decision is without prejudice to the adoption and filing of a valid rule or regulation of prospective application, pursuant to the authority conferred by sections 171 and 1142 of the Tax Law, interpreting or further defining the statutory exemption for newspapers and periodicals (Tax Law, § 1115, subd [a], par [5]; cf. Central Illinois Pub. Serv. Co. v United States, 435 US 21, 32-33).
Plaintiff is awarded costs of $20 and disbursements. Defendant’s cross motion for summary judgment is denied.

 In contrast, in Matter of Business Statistics Organization, v Joseph (299 NY 443), the Court of Appeals, called upon to interpret a now repealed local tax law of the City of New York exempting "periodicals” from taxation, was able to turn to the provisions of article 44 of the comptroller’s rules and regulations for the city tax.
In the instant case, there is no comparable rule or regulation relating to this subject. The court observes that, in 1965, the State Tax Commission issued an "information letter” (Sales Tax Information Letter No. 10, quoted in 3 CCH All-State Tax Reporter, par 55-610). It is clear that this information letter did at least purport to establish an interpretive and supplemental definition for the statutory exemption for "periodicals”. However, it is equally clear that this information letter is unenforceable. While the letter does clearly constitute a "rule or regulation” (NY Const, art IV, § 8; Executive Law, § 102, subs 1, 2; § 105; see State Administrative Procedure Act, § 102, subd 2 ["rule”]; 20 NYCRR 900.1 [c] [2]), it has never been duly adopted or filed in the manner which would entitle it to enforcement (NY Const, art IV, § 8; Executive Law, § 102; see State Administrative Procedure Act, § 203; 20 NYCRR 900.1; see, also, People v Cull, 10 NY2d 123, 126-129; Matter of Swalbach v State Liq. Auth. of State of N. Y., 7 NY2d 518, 526-527; Matter of Sturman v Ingraham, 52 AD2d 882, 884-885; see, generally, 2 Revised Record of Constitutional Convention of State of NY, 1938, pp 968, 971: State Agencies and State Administrative Procedure Act: A Study of Compliance, New York State Assembly Staff, Administrative Regulations Review Committee [July, 1977], ch 6, p 66 [Rulemaking by Memoranda].)
The applicable regulations presently in effect, at 20 NYCRR Part 528, still lack any provision interpreting the statutory exemption for newspapers and periodicals (see 20 NYCRR 528.6).