■ AMERICAN THEATRE PRESS, INC., Appellant, v TAX COMMISSION OF THE STATE OF NEW YORK et al., Respondents. — (Appeal No. 12422.) — Order and judgment (one paper) of the Supreme Court, New York County (Stadtmauer, J.) dated May 7, 1980, granting defendants' motion for summary judgment and declaring that *Playbill* magazine was not a periodical within the definition of the New York State Tax Law and regulations during the period December 1, 1974 through November 20, 1977 and that it is subject to the New York State sales and compensatory use tax for that period, affirmed, without costs. (Appeal No. 12423.) — Appeal from order of the Supreme Court, New York County (Stadtmauer, J.), entered September 3, 1981 denying plaintiff's motion for leave to renew and reargue is hereby unanimously deemed solely as a

motion to reargue and, as such, is dismissed as nonappealable, without costs and without disbursements. Our point of difference with our dissenting brother is the applicability of section 1115 (subd [i], par [D]) of the Tax Law to *Playbill* for the period December 1, 1974 through November 30, 1977. Paragraph (A) of that subdivision exempts from the section imposing a sales tax (Tax Law, § 1105) "[r]eceipts from the retail sale of a shopping paper to the publisher of such publication". After defining with precision the attributes of a "shopping paper" it provides (Tax Law, § 1115, subd [i], par [D]) "[t]he term 'shopping paper' shall not include mail order and other catalogs, advertising fliers, travel brochures, house organs, *theatre programs*" (emphasis supplied). It is undisputed that for the period in question *Playbill* did not meet one of the requisites required by the regulations to meet the definition of "shopping paper", i.e., availability to the public. Hence, for that period it did not meet the standards for exemption and was properly considered a theatre program. That it thereafter altered its method of operation so as to comply with all the requisites of the regulations and obtained an advisory opinion from the Tax Department that since July 1, 1979 it has qualified as a periodical exempt from State and local sales and compensating use taxes in no way exempts it from liability for the period here in question. Concur — Birns, Sullivan, Lupiano and Bloom, JJ.

Kupferman, J. P., dissents with respect to Appeal No. 12422 in a memorandum as follows: I would reverse and declare for the plaintiff. Plaintiff-appellant, publisher of *Playbill,* has been exempt from city sales and compensating use tax (former Administrative Code of City of New York, § A46-6.0, subd [a], par [5]) and then New York State sales and compensating use tax (Tax Law, art 28, § 1115, subd [a], par [5]), as a periodical for a total of 37 years. Originally, *Playbill* was considered exempt pursuant to a New York City Comptroller's letter in 1941. In 1965, the State assumed the duty of collecting sales tax and the exemption was continued. On September 1, 1977, an amendment to the Tax Law was made which added "shopping papers" to the list of exempt publications (§ 1115, subd [i]) and specifically excluded "theatre programs" (§ 1115, subd [i], pars [A], [D]) from the sales tax exemption. The exclusion of "theatre programs" should not apply to a publication like *Playbill.* It is conceded that a small part of the publication is a program for the theatre in which it is distributed, but this does not transform the entire publication into a theatre program. *Playbill* is published every month and each edition contains news items and articles on the general topic of theatre. Each theatre has a customized edition, which shows the current production on the cover and an insert in the middle giving the cast of characters, all other aspects of the publication being the same for all theatres that month. Although it does contain a "theatre program" in each copy, the essence of the publication is that of a monthly periodical of and concerning the theatre. Certainly, the plain and ordinary meaning (McKinney's Cons Laws of NY, Book 1, Statutes, § 94) of the words "theatre program" would not encompass a publication that is distributed in almost every major theatre and results in a circulation that exceeds one million readers a month. The State Tax Commission also argues that, even if *Playbill* was not considered a "theatre program," it still did not conform to the requirements specified in article 53 of the New York City Sales Tax Regulations for "periodicals." "3a. It must be published at stated intervals, at least as frequently as four times a year, b. It must have the element of general availability to the public, c. It must have continuity as to title and general nature of content from issue to issue, d. It must not, either singly or, when successive issues are put together, constitute a book, and e. Each issue must contain a variety of articles by different authors devoted either to literature,

the sciences or the arts, some special industry, profession, sport or other fields of endeavor." (These same elements have now been formally adopted by the State Tax Commission in 20 NYCRR 528.6 [c] [1] [i]-[v].) Clearly, four of the five requirements are met by *Playbill; Playbill* is published 12 times a year, it does not constitute a book, there has been continuity of title and content, and each issue contains a variety of articles by different authors on cultural and theatrical subjects. At issue is whether *Playbill* is available for general circulation to the public. *Playbill,* although not widely advertised, was available to subscribers as well as all theatregoers. The exact phrase "general availability" must be understood to mean that "any member of the public with the inclination and available funds could subscribe" (*Business Statistics Organization v Joseph,* 299 NY 443, 451). Recently, in a Tax Commission advisory opinion, *Playbill* was acknowledged to be a periodical on the basis that they had increased their subcription solicitation. This Tax Commission opinion, dated July 21, 1981, stated: "The present policy of *Playbill's* management is vigorously to solicit subscribers * * * Accordingly, since July 1, 1979 Petitioner's publication, *Playbill,* has constituted a 'periodical' within the meaning and intent of section 1115(a)(5) of the Tax Law, thus qualifying for the exemption there provided." It seems, therefore, that the Tax Commission no longer contends that *Playbill* is really a "theatre program." Nowhere in the statute or regulations is there a requirement that a periodical must be sold on newsstands or subscriptions actively solicited, and the commission's reversal in position on this reasoning further supports *Playbill's* claim to the exemption during the period in dispute. From its inception, *Playbill* has been held exempt from sales taxes and it should continue to be, absent any showing of a change in legislative intent. (*Matter of Consolidated Edison Co of N. Y. v State Tax Comm.,* 24 NY2d 114.) *Playbill* should be considered an "exempt periodical" and the benefits inuring to those publications which are exempt should be applied here.