Robert FIFIELD, Plaintiff,

v.

AMERICAN AUTOMOBILE ASSOCIA-
TION, Defendant.

Civ. No. 616.

United States District Court
D. Montana,
Billings Division.

Jan. 16, 1967.

Berger, Anderson & Sinclair, Billings, Mont., for plaintiff.

Crowley, Kilbourne, Haughey, Hanson & Gallagher, Billings, Mont., for defendant.

ORDER
AND
MEMORANDUM OPINION

JAMESON, Chief Judge.

This is a motion to dismiss an action for libel, removed to this court on grounds of diversity. The complaint alleges, inter alia, that the defendant annually prints a volume entitled "Northwestern Tour Book", which lists and rates motels, hotels and eating establishments throughout the northwestern United States. The defendant makes an annual charge to establishments that desire to be rated and listed as members of the defendant association. The rating system used in the 1965–1966 volume, in ascending order, was: (1) Satisfactory, (2) Good, (3) Very Good, (4) Excellent, and (5) Outstanding. The rating system used in the 1966–1967

volume, in ascending order, was: (1) Good, (2) Very Good, (3) Excellent, and (4) Outstanding.

The plaintiff is the lessee and operator of a motel in Livingston, Montana, and was a paid subscriber to the 1965–1966 volume. In that volume, plaintiff's motel was rated as "Very Good". About September 30, 1965, plaintiff informed defendant that he no longer wished to be a member of the association, that he was dissatisfied with defendant's rating system, that he did not desire to be rated in the tour book, and accordingly was not renewing his membership. However, plaintiff's establishment was included in the 1966–1967 tour book, and was given a "Good" rating.

Prior to the 1966–1967 volume, plaintiff had expended $25,000 in remodeling the motel, and now brings suit for libel, because of the lower rating.

Defendant contends that the complaint fails to state a claim upon which relief can be granted because plaintiff did not comply with the requirements of R.C.M. 1947, § 64–207.1, which provides:

> "Before any civil action shall be commenced on account of any libelous or defamatory publication in any newspaper, magazine, periodical, radio or television station, the libeled person shall first give those alleged to be responsible or liable for the publication a reasonable opportunity to correct the libelous or defamatory matter. Such opportunity shall be given by notice in writing specifying the article and the statements therein which are claimed to be false and defamatory and a statement of what are claimed to be the true facts. * * * The first issue of a newspaper, magazine or periodical published after the expiration of one week from the receipt of such notice shall be within a reasonable time for correction. * * *."

Plaintiff contends that (1) this statute is not applicable because the publication in question is not a magazine or periodical; (2) the required notice was in fact given; and (3) under the provisions of Article III, Section 10 of the Montana Constitution, the jury, not the court, determines all questions in a libel suit.[1]

Both parties filed briefs, from which it appeared that the tour books would be presented for the court's consideration in determining the motion. Accordingly, pursuant to order entered November 4, 1966, a hearing was held on the motion on November 16, 1966, at which time both parties were given an opportunity to "present all material pertinent to the motion". The two tour books were received in evidence. Oral argument was presented by counsel, and additional briefs were filed subsequent to the hearing.

■ Since matters "outside the pleading" were "presented to and not excluded by the court", the motion to dismiss, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, is treated as one for summary judgment. Warren v. Lawler, 9 Cir. 1965, 343 F.2d 351; Lone Star Cement Corp. v. F.T.C., 9 Cir. 1964, 339 F.2d 505; International Longshoremen's and Warehousemen's Union v. Kuntz, 9 Cir. 1964, 334 F.2d 165.

■ It is well settled that summary judgment is proper only where there is no genuine issue of a material fact or where viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law. Consolidated Electric Co. v. United States, 9 Cir. 1966, 355 F.2d 437; United States for use and Benefit of Austin v. Western Electric Co., 9 Cir. 1964, 337 F.2d 568; Cameron v. Vancouver Plywood Corp., 9 Cir. 1959, 266 F.2d 535.

1. Section 10 of Article III of the Constitution of Montana reads:

"No law shall be passed impairing the freedom of speech; every person shall be free to speak, write, or publish whatever he will on any subject, being responsible for all abuse of that liberty; and that in all suits and prosecutions for libel, the truth thereof may be given in evidence; and the jury, under the direction of the court, shall determine the law and the facts."

■ The primary question presented by defendant's motion is whether the terms of the statute quoted supra are applicable to a publication such as the "Northwestern Tour Book". The statute requires that notice of defamatory matter be given to any "newspaper, magazine, periodical, radio or television station." Accordingly, it must be determined whether the Court may hold as a matter of law that the volume in question is a magazine [2] or periodical within the meaning of the statute.

The term "periodical" has been defined in a number of cases, although in different contexts. The leading case is Houghton v. Payne, 1904, 194 U.S. 88, 24 S.Ct. 590, 48 L.Ed. 888, where the Supreme Court defined the term under a postal statute designating such publications as second class mail. The publication involved in that case was a series of paper covered books, consecutively numbered, containing a novel or collection of short stories or poems. In holding that the volumes were books rather than periodicals, the Court stated:

"A periodical, as ordinarily understood, is a publication appearing at stated intervals, each number of which contains a variety of original articles by different authors, devoted either to general literature or some special branch of learning or to a special class of subjects. Ordinarily each number is incomplete in itself, and indicates a relation with prior or subsequent numbers of the same series. It implies a continuity of literary character, a connection between the different numbers of the series in the nature of the articles appearing in them, whether they be successive chapters of the same story or novel or essays upon subjects pertaining to general literature. * *.

"A book is readily distinguishable from a periodical, not only because it usually has a more substantial binding (although this is by no means essential), but in the fact that it ordinarily contains a story, essay, or poem, or a collection of such, by the same author, although even this is by no means universal, as books frequently contain articles by different authors. Books are not often issued periodically, and, if so, their periodicity is not an element of their character. * * * It is sufficient to observe that, in our opinion, the fact that a publication is issued at stated intervals, under a collective name, does not necessarily make it a periodical." (194 U.S. at 97–98, 24 S. Ct. at 592).

The same question was considered in Smith v. Hitchcock, 1912, 226 U.S. 53, 33 S.Ct. 6, 57 L.Ed. 119. The volumes in that case were published weekly, and contained a single complete story. The Court again found that the publications were books, and said:

"The noun 'periodical,' according to the nice shade of meaning given to it by popular speech, conveys at least a suggestion, if not a promise, of matter on a variety of topics, and certainly implies that no single number is contemplated as forming a book by itself. * * * The word 'book,' also, of course, has its ambiguities, and may have different meanings according to the connection in which it is used. * * * Without attempting a definition, we may say that generally a printed publication is a book when its contents are complete in themselves, deal with a single subject, betray no need of continuation, and, perhaps, have an appreciable size. There may be exceptions, as there are other instances of books. It hardly would be an exception if, where the object is information and the subject-matter is a changing one, a publication periodically issued, giving information for the time, should be held to fall into the second class. (226 U.S. at 59, 33 S.Ct. at 8).

2. If the "Northwestern Tour Book" is not a periodical, then it is also not a magazine, since "periodical" is the generic term within which "magazine" is included. Application of Wings Pub. Co., 1945, 148 F.2d 214, 215, 32 C.C.P.A. 926. Accordingly, only the term "periodical" will be considered.

The definitions in these two cases have been followed in other cases interpreting the meaning of the postal statute. See Dell Publishing Co., Inc. v. Summerfield, D.D.C.1961, 198 F.Supp. 843, 844, where bimonthly paper bound pamphlets of crossword puzzles were held not to be periodicals. All the publications considered under this statute were issued at least quarterly, since formal compliance with the statue requires that the matter be published at least four times per year.[3]

Under other types of statutes, courts have reached different conclusions with respect to the definition of "periodicals". In Schmidt v. United States, S.D.N.Y. 1892, 150 Fed. 238, the court found that serial stories, issued weekly, were periodicals within the purview of the Tariff Act of March 3, 1883, even if all the serials, when bound together, would constitute a book. However, in Moody's Investors Service v. McGoldrick, 280 N.Y. 581, 20 N.E.2d 25, the court held that pamphlets issued biweekly containing current information regarding dividends, financial reports and the like, which were consolidated into a bound reference manual annually, were not periodicals under a local tax statute.

Under the Federal Copyright laws, a monthly magazine of cartoons was held to be a periodical (Application of Wings Pub. Co., Inc., 1945, 148 F.2d 214, 32 C.C.P.A. 926), while collections of song sheets were held not to constitute periodicals under a New York City licensing ordinance. (People v. Samuels, N.Y.Sp. Sess., 1941, 28 N.Y.S.2d 113). The New York Court of Appeals in Business Statistics Organization, Inc. v. Joseph, 1949, 299 N.Y. 443, 87 N.E.2d 505, defined "periodical" as follows:

"Newspapers, magazines and periodicals are all vehicles for the transmission of news, opinions, ideas, information and literature. They have the common elements of periodicity, general availability to the public, and continuity as to title and general nature of content from issue to issue. They do not usually possess a substantial and permanent binding and the writings contained therein are customarily the product of an editorial staff rather than a single author." (87 N.E.2d at 507).

The definitions of "periodicals" in these cases are not entirely uniform. Most of them, however, either refer to the Houghton case, or couch their definitions in similar terms.

The term is not defined in the statute under consideration, and no definition appears in the statutory or decisional law of the State of Montana. In this situation the test of "common understanding" must be adopted. This was recognized by the Supreme Court in the Houghton case, where it was stated that to be a periodical publication the volume "shall not only have the feature of periodicity, but that it shall be a periodical in the ordinary meaning of the term." (194 U.S. at 96, 24 S.Ct. at 592). It is in this connection that the cases decided under other statutes have meaning. The situation was well summarized in Business Statistics Organization v. Joseph, supra, where the court said:

"We are referred to certain technical distinctions between newspapers and periodicals on the one hand, and books on the other, which have been found necessary in the administration of our Federal copyright and postal systems, and the attempts at definition which have been made with respect to those fields by statute, regulation and judicial opinion. These expressions, of course, were written in the light of the special problems and needs of those fields, and are not conclusive on the

---

3. The pertinent portion of the present statute, (39 U.S.C. § 4354) which is substantially unchanged from the statute considered in Houghton, reads as follows:
"(a) Generally a mailable periodical publication is entitled to be entered and mailed as second class mail if it—

(1) is regularly issued at stated intervals as frequently as four times a year and bears a date of issue and is numbered consecutively;"

question of what constitutes a periodical within the meaning of the local sales tax law here involved. To some degree, however, these expressions have entered our speech and thought and have influenced the common understanding of the word 'periodical' ". (87 N.E.2d at 507–508).

The Random House Dictionary defines a "periodical" as "a magazine or other journal that is issued at regularly recurring intervals". In turn, a "journal" is defined as "any periodical or magazine, as one published for a learned society or profession", such as "The Journal of Higher Education". Webster's New World Dictionary defines a periodical as "a publication appearing at regular intervals of more than one day, as a weekly magazine".

While defendant correctly points out that the Montana statute does not provide that a periodical must be published more often than annually, it is noted that in all cases where the courts have considered the question, the publication was in fact published more frequently than the "Northwestern Tour Book." And "the fact that a publication is issued at stated intervals, under a collective name, does not necessarily make it a periodical". (Houghton v. Payne, supra, 194 U.S. at 98, 24 S.Ct. at 592). In any event, the *interval* of publication, as well as the *periodicity* of publication bears upon the common understanding of the term.[4]

The legislative intent in the enactment of the Montana Statute may also be considered. The Act was passed "for the giving of reasonable notice in writing to publisher and reasonable opportunity to correct libelous matter * * * in any newpaper, magazine, periodical, radio or television station". Laws of Montana, 1961, Ch. 159, Sec. 1. It also appears that if "the publication was made under honest mistake or misapprehension, then a correction, timely published, * * * shall constitute a defense against the recovery of any damages except actual damages, as well as being competent and material in mitigation of actual damages to the extent the correction published does so mitigate them." R.C.M.1947, § 64–207.1.

The deliberate exclusion of books from this statutory exemption should be interpreted strictly, as other states with similar statutes have held. Illustrative of this is Section 48a of the California Civil Code. That statute denies recovery of general damages upon retraction, but applies only to newspapers and radio stations.[5] In Morris v. National Federation of the Blind, 1961, 192 Cal.App.2d 162, 13 Cal.Rptr. 336, an attempt was made to apply this statute to a magazine. In holding the statute inapplicable the court said: "On full review of the statute, we conclude that it applies only to a publication in a newspaper or by radio. Its terms are clear. The Legislature conspicuously failed to include magazines in the protected group." (13 Cal.Rptr. at 338–339).[6]

Most similar statutes have been applied to news dissemination media, where a

---

4. We are informed that in Library Science, the decisive interval is one-half year. A publication issued twice a year or less is classified as a "serial" or "periodical" and those issued annually or in single volumes are classified as "books".

5. Section 48a provides in part:
"In any action for damages for the publication of a libel in a newspaper, or of a slander by radio broadcast, plaintiff shall recover no more than special damages unless a correction be demanded and be not published or broadcast, as hereinafter provided."

6. A constitutional problem was raised by the California statute due in large part to the exclusion of other periodical publications. See Werner v. Southern California Associated Newspapers, 1950, 35 Cal.2d 121, 216 P.2d 825, 13 A.L.R.2d 252; White v. Valenta, 1965, 234 Cal. App.2d 243, 44 Cal.Rptr. 241; Pridonoff v. Balokovich, 1951, 36 Cal.2d 788, 228 P.2d 6. It may be that the Montana legislature sought to avoid this problem by specifically including "magazines, periodicals * * * television stations". If so, the inclusion of these terms would not necessarily suggest that the purpose of the act was to protect anything other than news media.

retraction would have an almost instant countering effect.[7]  Apparently this was the purpose in the passage of the California statute.  Werner v. Southern California Associated Newspapers, supra.

■■  The publication in question has some characteristrics of a book and others of a periodical.  Considering all of the factors and on the basis of the complaint and material now before the court, it is my tentative conclusion that the publication is a book and certainly may not be held as a matter of law to be a periodical.[8]

Having reached this conclusion it is unnecessary at this time to consider the other contentions of plaintiff.  It may be noted, however, that it is my tentative conclusion that the letter written by plaintiff would not constitute a compliance with the notice requirements of the statute, if the statute should be found applicable; and that the decisions of the Montana court do not support plaintiff's contentions with respect to the effect of the constitutional provision.

In interpreting the constitutional provision in Griffin v. Opinion Pub. Co., 1943, 114 Mont. 502, 138 P.2d 580, the court said:

> "While our Constitution like that of Missouri, Colorado, South Dakota and Wyoming provides that in libel suits 'the jury, under the direction of the court, shall determine the law and the facts', yet the decisions clearly show that the function of the court and jury is not greatly different in the trial of libel from what it is in other cases.

> "In other words, it is for the court and not the jury to pass upon demurrers to the complaint; upon the admissibility of the evidence; upon motions for nonsuit; upon motions for a directed verdict; upon motions for a new trial and upon motions to set aside verdicts or vacate judgments."

(114 Mont. at 512, 138 P.2d at 586)

See also Kimball, Defamation; The Montana Law, 20 Mont.L.Rev. 1, 35–36 (1958) where the cases are collected.

It is ordered that the motion to dismiss is denied, and the defendant is granted 30 days to answer.

---

7.  In the instant case, the publication of a retraction would benefit neither the plaintiff nor the defendant appreciably.  It would under most circumstances not appear in time to rehabilitate the damage to plaintiff's reputation in the eyes of the previous year's prospective tourist trade, and would not appreciably mitigate plaintiff's actual damages, since the whole year's business would be lost before the retraction appeared.

8.  This will not preclude further consideration of the question at a later date or the presentation of further proof of the meaning of the word "periodical".