COMMONWEALTH *vs.* ZONE BOOK, INC.

Suffolk.    December 7, 1976. — April 13, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS,
& LIACOS, JJ.

*Obscenity.    Constitutional Law,* Equal protection of laws.    *Jurisdiction,*
Obscenity.    *Words,* "Book," "Magazine."

A substantial printed publication is a book for the purposes of G. L.
    c. 272, §§ 28C-31, if it is complete in itself, betraying no evidence of
    continuation with publications of a similar nature issued at regular
    periodic intervals.  [368-371]
At a trial on complaints charging the defendant with possession of ob-
    scene magazines with intent to distribute them in violation of G. L.
    c. 272, § 29, evidence required a finding that the publications were,
    as matter of law, books within the meaning of §§ 28C-31, and it was
    error to deny the defendant's motion to dismiss where the prosecu-
    tion failed to show it had met the conditions precedent to a proceed-
    ing under § 29, as required by § 28I.  [371-373] KAPLAN, J., and
    LIACOS, J., concurring.

Two COMPLAINTS received and sworn to in the Munici-
pal Court of the City of Boston on August 30, 1974, and
November 20, 1974, respectively.

On transfer to the Supreme Judicial Court, the cases
were reserved and reported by *Reardon,* J.

*Daniel J. O'Connell* for the defendant.

*Kevin F. O'Donnell,* Assistant District Attorney, for the
Commonwealth.

HENNESSEY, C.J.    The Commonwealth prosecuted the
defendant on two complaints charging possession of ob-
scene magazines with intent to distribute them in violation
of G. L. c. 272, § 29. The defendant filed motions to dismiss
the complaints, alleging that the matter possessed consti-
tuted books, not magazines, so that the Commonwealth's
actions pursuant to § 29 were premature. General Laws
c. 272, § 28I, requires as a condition precedent to proceed-

ings under § 29, involving "books," the in rem procedures set forth in G. L. c. 272, §§ 28C, 28D, 28E, 28G, 28H.[1] After denial of these motions the defendant successfully petitioned, pursuant to G. L. c. 211, §§ 3, 4A, for transfer of the cases to this court. A single justice of this court ordered the cases reserved and reported to the full court for decision.

In August, 1974, two Boston police department detectives entered premises controlled by the defendant looking for obscene materials. They purchased two printed publications, each consisting of more than forty pages, bound by staples, containing a series of photographs with incidental text but no advertising or variety in subject matter.[2] The publications do not identify their photographers, editors, or publishers. One of them has, on its cover, a volume number I and the "warning[:] if you find sex offensive, do not purchase this magazine." The publications themselves were offered in evidence.

---

[1] The word "commencement" is stressed advisedly, since the beginning of in rem proceedings is all that is required prior to indictment. Section 28I, inserted by St. 1974, c. 430, § 8, says that "[t]he procedures set forth in . . . shall be a condition precedent to the institution of any proceedings pursuant to . . . [§§ 29 or 30] for dissemination of obscene books." When that section is read in conjunction with § 28H, it is clear that the condition precedent to the commencement of the § 29 or § 30 type case is that the in rem complaint under §§ 28C, 28D, 28E, 28G, 28H be filed, and not that it shall be completed. Section 28H, as appearing in St. 1974, c. 430, § 8, makes this clear by providing that in a prosecution under § 29 for an offense committed after the "filing" of the § 28C proceeding, "the fact of such filing and the action of the court or jury thereon, if any, shall be admissible in evidence." Section 28H then provides (a) that if the alleged criminal offense occurred after a final decree has been entered "against the book" and the book is obscene the defendant is conclusively presumed to have known that the book was obscene, (b) that if the final decree had been entered "in favor of the book he shall be conclusively presumed not to have known said book to be obscene," and (c) that "if no final decree had been entered but a proceeding had been filed prior to such offence, . . . [he] shall be conclusively presumed to have had knowledge of the contents of said book."

[2] The photographs deal with explicit sexual conduct. However, this fact is not relevant here, since it relates to the obscenity of the publications' contents, an issue which is not before us.

Two witnesses, a retail bookstore manager and a public librarian, agreed that they would classify these publications as paperback photography books, largely because neither publication gave any indication of serialization or periodicity. The witnesses also considered that the publications' monographic contents, permanent staple bindings, and formats demonstrate that they are books, not magazines. The Commonwealth does not maintain that it proceeded against these publications under §§ 28C-28H before instituting § 29 proceedings.

The defendant argues that these publications are "books" within the ordinary and approved meaning of that word and that this meaning comports with the purposes of G. L. c. 272, §§ 28-32. Because the Commonwealth failed to comply with the requirements of G. L. c. 272, § 28I, the defendant maintains the trial judge erred in denying the motions to dismiss. We agree.

We conclude on the evidence offered below that the publications involved herein are books and are not magazines, as matter of law, and therefore the Commonwealth was required to meet the condition of G. L. c. 272, § 28I, before instituting § 29 proceedings against dissemination of these publications. Hence, the defendant's motions to dismiss the complaints must be granted.

1. General Laws c. 272, § 28I, states that "[t]he procedures set forth in sections twenty-eight C, twenty-eight D, twenty-eight E, twenty-eight G and twenty-eight H shall be a condition precedent to the institution of any proceedings pursuant to section twenty-nine or thirty for dissemination of obscene books." Section 28C, as appearing in St. 1974, c. 430, § 3, provides for in rem proceedings against books believed to be obscene, with notice by publication generally and by registered mail "to the publisher . . ., to the person holding the copyrights, and to the author, in case the names of any such persons appear upon said book . . . ." Section 28D allows anyone interested in a book's dissemination to file an answer, while § 28E permits adjudication of obscenity by general default if no

person answers. Sections 28F, 28G, and 28H deal with the in rem hearing itself and its legal effects.

The statutory scheme does not define "books," although it defines "matter" as comprising "any printed material ... including but not limited to, books, magazines, ... pamphlets ...." G. L. c. 272, § 31, as appearing in St. 1974, c. 430, § 12. When a statute does not define its words we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose. See *Commonwealth* v. *Gove,* 366 Mass. 351, 354 (1974); *Franki Foundation Co.* v. *State Tax Comm'n,* 361 Mass. 614, 617 (1972). We derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions.

The words "books" and "magazines" have established definitions in other legal contexts. In 1912, Mr. Justice Holmes, construing Federal postal statutes, said "generally a printed publication is a book when its contents are complete in themselves, deal with a single subject, betray no need of continuation, and, perhaps, have an appreciable size." *Smith* v. *Hitchcock,* 226 U.S. 53, 59 (1912). A United States District Court cited this language in the context of the Montana libel statute, looking also at the Montana Legislature's purpose in giving special treatment to books (opportunity to correct libellous matter). *Fifield* v. *American Auto. Ass'n,* 262 F. Supp. 253, 255-257 (D. Mont. 1967). Similarly, looking at the legislative purpose in dealing specifically with "magazines," courts generally have defined "magazines" as a subspecies of periodicals, emphasizing their periodicity, their continuity as to title and nature of contents from issue to issue, and their authorship usually by an editorial staff rather than by a single author. See *id.* at 256-257 (libel statute); *Application of Wings Publication Co.,* 148 F.2d 214, 215 (C.C.P.A. 1945) (trademark statute); *Business Statistics Organizations, Inc.* v. *Joseph,* 299 N.Y. 443, 449 (1949) (sales tax ordinance). These definitions are consistent with the com-

mon understanding of the words at issue as well as the dictionary definitions thereof.[3]

The apparent legislative purpose in especially protecting books is some indication, as shown in our reasoning below, that the Legislature intended to emphasize periodicity as a distinguishing criterion between books and magazines.

It appears that the Legislature intended that potential defendants under G. L. c. 272, §§ 29, 30, should receive the clearest possible notice of their liability for dissemination of obscene materials, as long as such notice would not compromise other policy considerations of the statutory scheme. Cf. *Commonwealth* v. *707 Main Corp.*, 371 Mass. 374, 381-382 (1976). In rem procedures provide disseminators with the clearest possible notice that the materials they disseminate are obscene and therefore dissemination constitutes prohibited conduct.[4] See *Paris Adult Theatre I* v. *Slaton*, 413 U.S. 49, 54 (1973). These procedures, while providing constitutionally preferable notice, are characteristically expensive and time consuming. The Legislature apparently has concluded that the virtues of in rem notice outweigh the procedure's time and expense defects when liability for dissemination of "books" is involved, but, when other matter is involved, that the needs for effective en-

---

[3] "[B]ook ... a collection of written, printed, or blank sheets fastened together along one edge ... a long systematic literary composition ...." "[M]agazine ... (1): a periodical that usu. contains a miscellaneous collection of articles, stories, poems, and pictures and is directed at the general reading public (2): a periodical ... directed at a group having a particular hobby, interest or profession ...." Webster's Third New Int'l Dictionary (1961).

[4] In rem procedures protect potential defendants who disseminate materials they believe in good faith to be nonobscene. Such procedures also protect members of the general public who wish to obtain, without self-censorship by disseminators fearing criminal or civil liability, materials which are not obscene but which are close to the obscenity line. Although ambiguity in the application of a statutory prohibition to marginal cases is insufficient to constitute a violation of the due process clause of the United States Constitution, *Miller* v. *California*, 413 U.S. 15, 27 n.10 (1973), see *Commonwealth* v. *707 Main Corp.*, 371 Mass. 374, 383 (1976), the law prefers to avoid such ambiguity when possible. Cf. *Paris Adult Theatre I* v. *Slaton*, 413 U.S. 49, 54 (1973). Z. Chafee, Government and Mass Communications 228-234 (1947).

forcement and fiscal restraint override the value of in rem notice. Thus, the desirability of unambiguous notice of a book's obscenity outweighs the risk that the delay inherent in in rem proceedings will result in continued availability for a few months of one obscene publication. On the other hand, the value of constitutionally unnecessary notice may not outweigh the risk that delay for in rem proceedings to suppress an obscene magazine will result in an automatic proliferation of obscene magazines available to the public at low prices through a widespread distribution system. Hence, the element of periodicity which has distinguished books from magazines in other contexts and which had accepted usage prior to the enactment of G. L. c. 272, § 28C-32, may be thought to have direct relevance to the legislative purpose in providing in rem procedures for the adjudication of books' obscenity.[5]

We conclude that a substantial printed publication is a book for the purposes of G. L. c. 272, §§ 28C-31, if it is complete in itself, betraying no evidence of continuation with publications of a similar nature issued at regular periodic intervals. A motion to dismiss proceedings under § 29 or § 30 must be granted when the defendant proves that the publication disseminated fits the above definition and that the prosecutor failed to follow the procedures set forth in §§ 28C, 28D, 28E, 28G, and 28H. G. L. c. 272, § 28I.

2. The defendant in these cases filed timely motions to dismiss alleging that the putatively obscene publications are books and that the requirements of G. L. c. 272, § 28I, have not been met. It presented evidence of completeness and lack of periodicity through the testimony of people accustomed to classifying publications by genre and through the lack of indications of continuity or serializa-

---

[5] Although the prosecution maintains only that these publications are magazines, we note that pamphlets and photographs lack the element of periodicity which distinguishes magazines but still are subjected to the speedier procedure. G. L. c. 272, §§ 28I, 31. Possibly, the expense of in rem procedures outweighs the desirability of unambiguous notice when publications of extreme brevity are involved.

tion in the publications themselves. The prosecution presented evidence that the publications have glossy covers, stapled bindings, abbreviated texts unrelated to the photographs which constitute the major content therein, few words, no author or publisher or copyright designation, and, on the cover of one publication, a volume number and the designation "magazine."

The publications were properly admissible as direct evidence of their own completeness or periodicity. A court may examine publications for evidence of continuity with other publications, and publications themselves can constitute sufficient evidence thereof. In this case, there was no evidence of serialization beyond a volume number on one publication. Since many books are published in several volumes, this fact alone was insufficient for a finding of periodicity. The designation "magazine" constitutes conclusory opinion testimony by persons unknown applying unknown criteria, if any, and is not probative. In addition, the publications' formats, while marginally relevant to their appropriate classification, were inconclusive in this case, given the testimony adduced by the defendant that the formats were indicative of paperbound books rather than of periodicals. Although testimony by experts and others who deal routinely with various kinds of publications is not necessary to a decision on publications' classifications, a judge may properly consider such testimony.

The prosecution argues that even if its evidence does not warrant a finding of periodicity, the evidence shows that the publications do not come within the intended area of § 28I protection. We disagree for the reasons given above. The protection of § 28I (which clearly foresaw the possibility that publications' authors, publishers, and copyrights would be unknown, see G. L. c. 272, §§ 28C, 28D) should be broadly construed as extending to all matter falling within the classification "books." The statutory scheme on its face does not confine § 28I protection to marginal cases where notice of obscenity prior to prosecution of disseminators is particularly desirable. See note 4, *supra.*

The defendant has shown, as matter of law, that these publications are books within the meaning of the statutes. Because the prosecution failed to show that it had met the conditions precedent required by G. L. c. 272, § 28I,[6] the defendant's motions to dismiss were erroneously denied. Those denials are vacated and the case is remanded to the county court where judgments of dismissal are to be entered as to both complaints.

*So ordered.*

KAPLAN, J. (concurring).  Believing the statute to be fundamentally unconstitutional, I concur in the result. See my dissenting opinion in *Commonwealth* v. *707 Main Corp.*, 371 Mass. 374, 386 (1976), and the references therein.

LIACOS, J. (concurring).  As I did not participate in the decisions in *District Attorney for the N. Dist.* v. *Three Way Theatres Corp.*, 371 Mass. 391 (1976), *Commonwealth* v. *Thureson*, 371 Mass. 387 (1976), and *Commonwealth* v. *707 Main Corp.*, 371 Mass. 374 (1976), I have not yet had an opportunity to express my views on the extent of permissible State regulation of that which is denominated obscenity. While the issue appears foreclosed under the Federal Constitution, see *Miller* v. *California*, 413 U.S. 15 (1973); *Paris Adult Theatre I* v. *Slaton*, 413 U.S. 49 (1973), the position taken by my brother Kaplan, in *707*, *supra* at 386, that the issue must be explored under the Massachusetts Constitution has substantial merit. "To allow the State to step in and punish mere speech or publication that the judge or the jury think has an *undesirable* impact on thoughts but that is not shown to be a part of unlawful action is drastically to curtail ... [freedom of expression]." "The legality of a publication in this country should never be allowed to turn either on the

---

[6] As to burden of proof, see the penultimate paragraph in *Commonwealth* v. *Ferro, post,* 379, 386 (1977), decided this day.

purity of thought which it instills in the mind of the reader or on the degree to which it offends the community conscience. By either test the role of the censor is exalted and society's values in literary freedom are sacrificed." *Roth* v. *United States,* 354 U.S. 476, 509, 513 (1957) (Douglas, J., dissenting).

A constitutional system of limited government, where ultimate sovereignty and wisdom rest in the citizenry and not in the government, and which derives its wisdom from the citizens and not from itself, cannot coexist with legally sanctioned censorship or laws which place criminal penalties on freedom of expression. A government based on the premise of individual freedom cannot dictate what its citizens read or publish, however offensive those holding power may deem such materials to be. This is not to deny that government may protect juveniles and unconsenting adults from obtrusive exposure to otherwise protected speech as long as the protection reasonably regulates the manner and not the content. Compare *Kovacs* v. *Cooper,* 336 U.S. 77 (1949), with *Saia* v. *New York,* 334 U.S. 558 (1948). In short, we should consider the strong possibility that the Massachusetts Constitution would embrace the viewpoint espoused by Mr. Justice Brennan dissenting in *Paris Adult Theatre I* v. *Slaton, supra,* that "in the absence of distribution to juveniles or obtrusive exposure to unconsenting adults ... [the Massachusetts Constitution] prohibit[s] the State ... [g]overnment from attempting wholly to suppress sexually oriented materials on the basis of their allegedly obscene contents." 413 U.S. at 113.

1. The issues raised in these cases, however, must be addressed on the basis that *707* states the governing law. While that case held that the Legislature could regulate the dissemination of obscenity, it did not sanction procedures for doing so which are constitutionally defective. *McKinney* v. *Alabama,* 424 U.S. 669 (1976). *Freedman* v. *Maryland,* 380 U.S. 51 (1965). While the definition of "books" and "magazines" posited in the opinion of the court is based on reasonable plausibility and probably is

consistent with the intent of the Legislature, the majority opinion, in dictum, without the issue having been either briefed or argued gives the imprimatur of constitutional validity to the disparity of procedural protection afforded to sellers of books and denied to sellers of other printed matter. The dictum in these cases appears based on dicta in *707*, a decision which also did not reach this issue as between various types of printed matter, but dealt only with the distinction between moving picture film and printed matter.[1] For this reason and the fact that the dictum in these cases is given the force of law in *Commonwealth* v. *Ferro, post,* 379, 381-382 (1977), where the issue is summarily disposed of in mistaken reliance on *707,* a fuller discussion must be accorded the issue.[2]

Even if it is assumed that neither the Federal nor the State Constitution requires a civil proceeding as a condition precedent for the initiation of a criminal proceeding where printed matter is involved, but cf. *Miller* v. *California,* 413 U.S. at 41 (Douglas, J., dissenting), there can be no doubt that such proceedings do serve a salutary purpose. *Paris Adult Theatre I* v. *Slaton,* 413 U.S. 49, 55 (1973). The majority opinion apparently concedes this point. It is unreasonable to expect a seller of either books or magazines to be familiar with every item in his inventory given the inherent vagueness of obscenity standards in general, see *Miller* v. *California, supra.* The initiation of a prior civil proceeding puts a seller on notice that he is engaging in conduct which may be unlawful and thus gives him the opportunity to conform his conduct to the law. In essence, as noted by the majority, such a procedure protects those who possess a good faith belief that they are

---

[1] There may be factors which permit differentiation between films and printed matter, *Freedman* v. *Maryland,* 380 U.S. 51, 59 (1965), but these same factors do not necessarily render permissible any distinction between forms of printed matter.

[2] "These decisions do not justify today's decision. They merely prove how a hint becomes a suggestion, is loosely turned into dictum and finally elevated to a decision." *United States* v. *Rabinowitz,* 339 U.S. 56, 75 (1950) (Frankfurter, J., dissenting).

not violating the law. This, it seems to me, is more consistent with the idea behind the obscenity laws which are aimed primarily not at punishing sellers of allegedly obscene material but at protecting society from the supposedly harmful effects that flow from the free distribution of such matter. While the benefit of this procedure is obvious from the point of view of the alleged societal interest involved as well as notions of fundamental fairness, it is not, as has been noted, constitutionally required. That does not mean, however, that once having afforded the benefits of such a proceeding to a particular class the State can unreasonably withhold these benefits from members of another class similarly situated. *Douglas* v. *California*, 372 U.S. 353 (1963). *Griffin* v. *Illinois*, 351 U.S. 12 (1956). See *Warren* v. *Michigan Parole Bd.*, 23 Mich. App. 754 (1970). This is what the State has done here, and what the court by its decision implicitly approves of today.

There is, in short, no rational basis for discriminating in the extent of procedural protection available, between sellers of books and sellers of magazines.[3] While there are arguably three bases on which the Legislature might have made the discrimination, none of them has a sufficient factual basis to overcome the denial of the equal protection of the law which the disparity effectuates.

It might be argued that books, more so than magazines, have a longer life and thus there is a greater probability that over the course of that longer life they will find their way into the hands of more of those who fall within the class protected by G. L. c. 272, § 28 et seq. *Kaplan* v. *California*, 413 U.S. 115, 120 (1973). However, not only does this rationale not fit within the definitional criteria

---

[3] To the extent the opinion of the majority seeks to justify the discrimination between these two classes on the basis that in rem proceedings are expensive, such a view is not justifiable as to a class similarly situated. Such a denial "may save the State some dollars and cents, but only at the substantial risk of generating frustration and hostility toward its courts among . . . consumers of justice." *Mayer* v. *Chicago,* 404 U.S. 189, 197-198 (1971). "An affluent society ought not [to] be miserly in support of justice, for economy is not an objective of the system . . . ." *Id.* at 201 (Burger, C.J., concurring).

posited by the court, it negates the fact that possibilities
of recirculation as well as the retention of back issues of
magazines means that the time period over which each
is likely to do harm must be considered to be virtually
identical.

It could also be argued that book sellers tend to have
larger inventories than magazine sellers and thus it is
more difficult for the former as opposed to the latter to
have the constitutionally required scienter, *Smith* v. *California*, 361 U.S. 147 (1959), in the absence of prior notice.
However, it is entirely conceivable that both obscene
books and magazines may be sold by the same vendors
in the same location and in equal quantities. Under the
statute, a seller may possess substantially the same material in two forms, one "book" and one "magazine." While
he would have the protection of the in rem proceeding
before criminal charges could be brought in respect to the
former, he could be brought up on criminal charges immediately for disseminating the same material in different
form in regard to the latter. In the absence of any evidence
that books tend to be possessed in larger quantities than
magazines, this rationale simply is not sufficient to overcome the constitutional limitations on State power. To
the extent periodicity is an element of what constitutes a
magazine, it is conceivable that any seller would at any
given time have greater quantities of magazines than
books since the former will, by definition, be published
in greater number. Thus, instead of relieving the seller of
being familiar with the greater portion of his inventory,
the statute puts greater burdens on him by requiring him
to be familiar with that which well may be the greater
part of his inventory when the opposite rationale is used
to justify the distinction.

Finally, it might be argued that obscenity is more apparent in a magazine than in a book because the former
is more likely to be in photographic rather than in textual
form. However, the court's opinion draws no such distinction, nor is any such distinction possible. Either a book
or a magazine is as likely as not to contain its objection-

able quality in printed as opposed to photographic form. Additionally, books composed primarily of photographic material come within the court's definitions as is illustrated by the court's decision today. No rational distinction can be made on this basis because it is not supported in fact. In no way can this classification be said to bear a reasonable relationship to the purposes of the in rem proceeding.

Since there is no rational basis for discriminating in the degree of procedural protection afforded books and magazines, my view is that so much of the statute as denies magazines and other printed matter that protection is invalid. I reach this point in response to the majority's expressed view to the contrary in these cases and in *Commonwealth* v. *Ferro, post,* at 381-382. There may be other constitutional infirmities in this statutory scheme open to further consideration by the court.[4] Such considerations are better left for another day.

2. I have no quarrel with the court's conclusion either here or in *Commonwealth* v. *Ferro, supra,* that the issue whether an item of printed matter is a book or magazine is a question of law to be decided by the court and not by the jury. The use of the term "condition precedent" in G. L. c. 272, § 28I, clearly implies that much. The court also holds that the failure to have an in rem proceeding in a case where such a proceeding is required defeats the jurisdiction of the criminal court. I have no quarrel with that. However, the court both here and in *Ferro* places the burden of defeating jurisdiction on the defendant. This clearly is not sound. As it is the prosecution which invokes the jurisdiction of the criminal court, the only obligation on the defendant is to raise the lack of jurisdiction, although the court may do so on its own motion. *Commonwealth* v. *Andler,* 247 Mass. 580 (1924). See G. L. c. 277, § 47A. Once the issue is raised the prosecution must

---

[4] See, e.g., the court's comment in 707 at 382 n.5, and my further comments in a separate opinion filed with *Ferro.*

produce sufficient facts and carry the burden of proof on the issue, not the defendant. Cf. 13 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 3611 (1975).