Connolly, J.
In the underlying action, Wendy Mar-chand has asserted a variety of claims against the named defendants for injuries she allegedly sustained at the hands of Amy Lague and Sonya Finnerty. Defendant Lucille Lague has brought this second motion for summary judgment,[2] alleging that no legal basis exists for imputing upon her liability for Amy Lague’s allegedly tortious conduct. For the reasons enumerated below, her motion is allowed.
BACKGROUND
The plaintiff contends that on October 1,1990, Amy Lague and Sonya Finnerty took her to an abandoned estate, whereupon they held her against her will and beat her. On October 10, 1991 the plaintiff filed a civil action in this court, alleging inter alia that Lucille Lague, Amy Lague’s grandmother, had breached a common law duty owed to the plaintiff to adequately supervise and control her granddaughter. The plaintiff contends that this duty flowed from an alleged "custodial or supervisoiy relationship” that Lucille Lague enjoyed vis-a-vis her granddaughter.
In support of her motion, Lucille Lague has offered her own affidavit, in which she contends that at the time of the alleged assault she was not Amy Lague’s legal guardian, nor had she been granted legal or physical custody. She also contends that Amy Lague never resided with her at her home in Uxbridge, Massachusetts during this time. The basic information conveyed in Lucille Lague’s affidavit is echoed in affidavits submitted by Jason Lague, Amy Lague’s brother, Ruth Lague, Amy Lague’s mother and Lawrence Lague, Amy Lague’s father.
During her deposition, Amy Lague testified that she listed her grandmother’s residence as the place she lived for the purpose of enrolling in the Uxbridge school system.[3] She also testified that in September of 1990, she would typically go to her grandmother’s house three or four times a week after school, although she did not do so on the date of the alleged attack upon the plaintiff.
In support of the plaintiffs opposition to this motion, Linda Marchand, the plaintiffs mother, has submitted an affidavitwhich states, inter alia, that “[u]pon information and belief’ Amy Lague was under the control and supervision of her grandmother at the time of the attack. Ms. Marchand acknowledged during her deposition, however, that the source of such knowledge was: 1) a conversation that her son engaged in with Jason Lague, and 2) information supplied by Maiybeth Beaudoin, whose brother was dating Lawrence Lague’s sister.
DISCUSSION
Summary judgment shall be granted when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that he or she is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). When the party moving for summary judgment is the defendant, this burden may be met by either submitting affirmative evidence that negates an essential element of the plaintiffs case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party demonstrates the absence of a triable issue) the party opposing the motion must respond and allege specific facts which establish the existence of a material issue of fact in order to defeat the motion. Pederson v. Time, Inc., supra at 17.
The primary issue raised by the defendant’s motion is whether a grandmother may be held vicariously liable for her granddaughter's tortious conduct. Lucille Lague contends that, pursuant to the unambiguous terms of G.L.c. 231, §85G, she cannot. In pertinent part, that section provides as follows:
Parents of an unemancipated child under the age of eighteen and over the age of seven years shall be liable in a civil action for any willful act committed by said child which results in injury or death to another person or damage to the property of another, . . . This section shall not apply to a parent *166 who, as a result of a decree of any court of competent jurisdiction, does not have custody of such child at the time of the commission of the tort. Recovery under this section shall be limited to the amount of proved loss or damage but in no event shall it exceed five thousand dollars.
The plaintiff and Lucille Lague both contend that G.L.C. 231, §85G, by its express terms, does not afford a remedy for a plaintiff seeking recovery against a grandparent for the torts of his or her grandchild, since that section only describes the potential liability of a child’s biological mother or father. As such, Lucille Lague contends that the plaintiffs claims against her are invalid. The plaintiff asserts, in turn, that since the statute is inapplicable, she may pursue other available common law remedies (and is thus not affected by the $5,000.00 limit on damages). I find both arguments to be unpersuasive, as I conclude that in certain circumstances a grandparent may be a “parent” within the meaning of G.L.c. 231, §85G.
G.L.c. 231, §85G contains no definition of the term “parent.” When the words contained within a statute are not expressly defined, they must be given “their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose.” Commonwealth v. Zone Books, Inc., 372 Mass. 366, 369 (1977). See, First Eastern Bank v. Jones, 413 Mass. 654, 659 (1992). The words’ usual and accepted meanings must be derived “from sources presumably known to the statute’s enactors, such as their use in other legal contexts and dictionary definitions.” Commonwealth v. Zone Books, supra at 369.
Lucille Lague correctly asserts that one common definition of the term “parent” is “a father or mother,” or, perhaps more precisely, one who begets and brings forth a child. It cannot be disputed, however, that the legal definition of the term is typically formulated in a broader fashion. For example, Black’s Law Dictionary (6th Ed. 1990) includes within its definition of the term “parent" the following:
(1) either the natural father or the natural mother of a child bom of their valid marriage to each other, if no subsequent judicial decree has divested one or both of them of their statutory coguardianship as created by their marriage: (2) either the adoptive father or the adoptive mother of a child jointly adopted by them, if no subsequent judicial decree has divested one or both of them of their statutory coguardianship as created by the adoption; (3) the natural mother of an illegitimate child, if her position as sole guardian of such child has not been divested by a subsequent judicial decree; (4) a child’s putative blood parent who has expressly acknowledged paternity and contributed meaningfully to the child’s support; (5) any individual or agency whose status as guardian of the person of the child has been established by judicial decree.[4]
As noted above, G.L.c. 231, §85G provides that a “parent” who has been divested of custody of a child by judicial decree may not be held liable for the torts of that child. Thus, the statute suggests that the element that defines the parent/child relationship is legal custody. Accordingly, I read G.L.c. 231, §85G to include within its definition of “parent” any person who posses legal custody over a child.[5] Since the unrebutted evidence submitted by Lucille Lague demonstrates that she has never been granted legal custody over Amy Lague, I conclude that she cannot be held liable for her granddaughter’s actions.
The plaintiffs’ contention that the common law recognizes other grounds for imputing liability upon a third person for the torts of a minor aside from those described by G.L.c. 231, §85G finds little support in the case law of this commonwealth. Despite dicta contained within Spence v. Gormley, 387 Mass. 258, 265 n.8 (1982), which suggests that the passage of G.L.c. 231, §85G[6] effected a departure from the common law, it seems clear that the standard for imposing liability is the same now as it was prior to the enactment of the statute.
In Alioto v. Marnell, 402 Mass. 36 (1988), the Supreme Judicial Court noted that “[a] parent has a duty to exercise reasonable care to prevent his minor child from intentionally or negligently inflicting harm on others, where the parent knows or should know of the child’s propensity for a particular type of harmful conduct and has the opportunity to take reasonable corrective measures.” Id. at 38. The court cited Caldwell v. Zaher, 344 Mass. 590, 592 (1962), which predates the enactment of the statute, to support its position.[7] I note that the rule enunciated in Caldwell, supra, was deemed to be comparable to the common law principles that the plaintiff now seeks to have this court recognize. See, Caldwell, supra at 592, citing Restatement of Torts, §316. Thus, seen in this light, G.L.c. 231, §85G should not be viewed as containing remedies distinct from those available at common law, but rather, it should simply be perceived as imposing a limitation upon such remedies. As Lucille Lague correctly points out, if the courts of this commonwealth were to recognize the availability of a remedy against a grandparent for injuries caused by his or her minor grandchild that falls outside of the ambit of G.L.c. 231, §85G, they would be creating the potential for recovery against a grandparent which could exceed the $5,000 limitation imposed by the statute on recovery against a “parent.” Again, this type of bizarre construction must be avoided.
Finally, I note that even if I were to acknowledge the availability of the type of common law cause of action asserted by the plaintiff against Lucille Lague, I would still be compelled to enter summary judgment on the defendant’s behalf. The claimed basis underlying Lucille Lague’s common law duty to the plaintiff was Amy Lague’s residence at her grandmother's Uxbridge home (and the attendant measure of control over Amy Lague that this living arrangement vested in Lucille Lague). The affidavits submitted by Lucille Lague, Jason Lague, Ruth Lague and Lawrence Lague tend to prove that Amy Lague did not reside with her grandmother at the time in question. Further, Lucille Lague *167 has demonstrated that Linda Marchand’s claimed knowledge of Amy Lague’s residence at her grandmother’s house was founded solely upon hearsay. As such, Linda Marchand’s affidavit must be disregarded. Madsen v. Erwin, 395 Mass. 715, 721 (1985). The only other evidence of Amy Lague’s residence with her grandmother offered by the plaintiff is Amy Lague’s deposition testimony that she listed her grandmother’s residence as being her own for the purpose of gaining enrollment into the Uxbridge school system. Such meager evidence is inadequate to stave off entry of summary judgment. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) (“[t]he mere existence of a scintilla of evidence in support of the plaintiffs position will not be sufficient to forestall [entry of summary judgment]”).
ORDER
For the foregoing reasons it is hereby ORDERED that Lucille Lague’s second motion for summary judgment is ALLOWED.

 Lucille Lague’s first motion for summary judgment was denied by this court (Neel, J.) on September 4, 1992.

 Lucille Lague admitted during her deposition that she had acknowledged in an affidavit that her name “was listed on the school emergency card at the Uxbridge High School as Amy Lague’s guardian.”

 G.L.c. 118, §1 provides, in pertinent part, that the term “ ‘[pjarent’ shall include, in addition to the father or mother of the . . . child, the following-stepfather, stepmother, stepbrother, stepsister: any blood relative, including those of the half blood, except cousins who are more distantly related than first cousins: adoptive relative of equal propinquity to the foregoing: and spouses of any such persons.”

 Were this court to rule that G.L.c. 231, §85G provides an exclusive remedy and that such a remedy is only available as against a child’s biological parents, as Lucille Lague suggests, the implication of such a determination would be that in those cases in which both of the biological parents of a minor child who has inflicted harm upon another are either deceased or do not have custody, no remedy would lie against the person (or persons) who has been assigned the legal responsibility for maintaining the child. This would be an absurd and unreasonable result, and such an interpretation must be avoided. Manning v. Boston RedevelopmentAuth., 400 Mass. 444, 453 (1987).

 St. 1969, c. 453.

 While G.L.c. 231, §85G was not referred to by the Alioto court, the statute was unquestionably in effect at the time of that decision.