On appeal, the defendants, J.W. and C.W., assert that a judge of the District Court erred in entering harassment prevention orders against them pursuant to G. L. c. 258E (258E orders).[3] They argue that the plaintiff failed to establish three or more acts of harassment, as required by G. L. c. 258E, § 1. We agree and vacate both orders.
Background. The plaintiff and the defendants, a married couple, have been neighbors since 1990. On May 8, 2017, the plaintiff filed complaints for protection from harassment against both defendants. Following an evidentiary hearing on May 30, 2017, the judge issued the 258E orders.[4]
The plaintiff's affidavits filed in support of her complaints described approximately a dozen incidents between 2013 and 2017. These include allegations that in 2013, C.W. threw pennies into the plaintiff's yard; in 2014, C.W. yelled at the plaintiff that she needed to paint her house; in 2015, the defendants threw yard waste onto the plaintiff's property, J.W. threw sticks and branches and kicked a rock onto the plaintiff's property, and, J.W., when C.W. was present, threw a rock onto the plaintiff's property and took mulch from her property; in 2016, C.W. threw yard waste onto the plaintiff's property, and J.W. stepped onto the plaintiff's property and threw sticks, rocks, and food debris onto the plaintiff's property; and in 2017, J.W. threw garbage onto the plaintiff's property and, J.W., when C.W. was present, threw something onto the plaintiff's property.[5] At the hearing, the plaintiff reiterated the allegations set forth in her affidavits. She also testified that she was upset by these events, and that she felt "under attack," "unsafe," "afraid," "intimidated," "uncomfortable," and "harassed." The plaintiff became aware of all but one of these incidents by reviewing videos from surveillance cameras she had installed at her home.[6]
Discussion. On review of a 258E order, "we consider whether the judge could find, by a preponderance of the evidence, together with all permissible inferences, that the defendant committed '[three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that [did] in fact cause fear, intimidation, abuse or damage to property.' " A.T. v. C.R., 88 Mass. App. Ct. 532, 535 (2015), quoting G. L. c. 258E, § 1. "The plaintiff bears the burden of proving that each of the three qualifying acts was maliciously intended, defined by G. L. c. 258E, § 1, as being 'characterized by cruelty, hostility or revenge,' and that each act was intended by the defendant to place the plaintiff in 'fear of physical harm or fear of physical damage to property.' " A.T., supra, quoting O'Brien v. Borowski, 461 Mass. 415, 427 (2012).
1. Plaintiff's fear. The standard for assessing the plaintiff's fear is a subjective one. See O'Brien, 461 Mass. at 427. "[F]ear is narrowly defined as fear of physical harm or fear of physical damage to property." Van Liew v. Stansfield, 474 Mass. 31, 37-38 (2016). Generalized apprehension, nervousness, feeling aggravated or hassled do not rise to the requisite level of fear. Cf. Wooldridge v. Hickey, 45 Mass. App. Ct. 637, 639 (1998).
The plaintiff testified that she felt "under attack," "unsafe," and "afraid." In addition, she was fearful that the defendants could retaliate against her for filing a civil lawsuit against them in the future. She concedes that there were no physical or verbal aggressions aside from being yelled at to paint her home. We assume without deciding that the plaintiff's evidence was sufficient to establish fear.[7]
2. Defendants' intent to cause fear, intimidation, abuse, or property damage. An essential element of civil harassment is intent. Here, the plaintiff failed to prove, by a preponderance of the evidence, that the defendants intended to cause fear, intimidation, abuse, or property damage.
a. Fear. With the exception of one incident, all of the defendants' conduct occurred outside of the plaintiff's presence and without the defendants' knowledge or expectation that she would become aware of these activities. But for the surveillance videos, the plaintiff would likely not have learned about the actions of the defendants. Moreover, the plaintiff concedes that there were no physical aggressions made by the defendants. There is no evidence that the defendants intended to cause the plaintiff fear.
b. Intimidation. General Laws c. 258E does not define intimidation, and it has thus far been held to be a form of fear. See C.E.R. v. P.C., 91 Mass. App. Ct. 124, 128 (2017). There is no evidence in this record that the defendants intended to intimidate the plaintiff, and the plaintiff's statement that she felt "intimidated" does not, by itself, prove that the defendants intended to intimidate her.
c. Abuse. Abuse is defined as "attempting to cause or causing physical harm to another or placing another in fear of imminent serious physical harm." G. L. c. 258E, § 1. There is no evidence, and the plaintiff does not contend, that either defendant intended to cause or did cause physical harm to the plaintiff. Nor is there any evidence that the defendants intended to place the plaintiff in fear of imminent serious harm. Rather, the plaintiff testified that there were no physical aggressions against her.
d. Property damage. Although small amounts of debris and yard waste were thrown onto the plaintiff's property, the videos show the defendants throwing the items toward, but not directly at, the plaintiff's house. The videos also do not depict force sufficient to demonstrate that the defendants intended the items to hit the house or cause damage to the plaintiff's property.
3. Malicious conduct. Malicious conduct is defined as acts which display "cruelty, hostility or revenge." G. L. c. 258E, § 1. Because the statute does not define these terms, "we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose." Commonwealth v. Zone Book, Inc., 372 Mass. 366, 369 (1977). "We derive [these] meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions."Id.
Here, the defendants' actions, while callow, did not display cruelty. The evidence did not establish that the defendants intended to endanger the plaintiff's person or health or inflict pain or suffering. See Commonwealth v. Daly, 90 Mass. App. Ct. 48, 51 (2016) (construing "cruelty" in animal cruelty statute, G. L. c. 272, § 77, as requiring "infliction of severe or unnecessary pain"). See also Flavell v. Flavell, 324 Mass. 362, 364 (1949) (construing "cruelty" in divorce statute, G. L. [Ter. Ed.] c. 208, § 1, as "creat[ing] danger to the person or health"); Webster's Third New International Dictionary 546 (1993) (defining "cruelty" as "disposition to inflict pain or suffering"). The evidence also was insufficient to establish revenge. See Webster's Third New International Dictionary 1942 (1993) (defining "revenge" as "to inflict harm or injury in return for ... an injury or insult").
Further, we cannot say that the defendants' actions display the level of "hostility" required by the statute. Definitions of "hostility" and "hostile" range from "resistance in thought or principle," "opposition," "marked by ... unfriendliness," and "not hospitable," to "antagonism," "animosity," and "marked by malevolence and a desire to injure." Webster's Third New International Dictionary 1094 (1993). As these definitions vary considerably, we look to the Legislature's intent to determine the appropriate meaning. See Commonwealth v. Escobar, 479 Mass. 225, 228 (2018) ("term with multiple meanings may have only one within context of statute"). See also Camargo's Case, 479 Mass. 492, 497-498 (2018) ("For questions of statutory interpretation, we must consider the intent of the Legislature ascertained from all the words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated" [quotations and citations omitted] ). Given that the Legislature intended to "confine the meaning of harassment to either fighting words or 'true threats,' " O'Brien, 461 Mass. at 425, we think the hostility required by the statute must demonstrate malevolence or an intent to injure. Although the defendants' actions commonly would be considered to be antagonistic, unfriendly, and inhospitable, they do not display the requisite level of hostility. See C.E.R., 91 Mass. App. Ct. at 131-132 ("boorish and no doubt upsetting [conduct] ... [does] not constitute 'harassment' within the meaning of c. 258E"). Contrast A.T., 88 Mass. App. Ct. at 538 (defendant's conduct was malicious; his statements that he was " 'fucking with [the plaintiff]' because she ruined his life" and that he wanted to punch the plaintiff because "she ruined his life" supported conclusion defendant was motivated by hostility).
4. Conduct aimed at a specific person. General Laws c. 258E, § 1, requires that the acts of harassment be "aimed at a specific person." DeMayo v. Quinn, 87 Mass. App. Ct. 115, 115 (2015). Here, as all but one incident occurred outside the presence of the plaintiff, and the plaintiff's affidavit states that the defendants' actions were directed at her and her son, the plaintiff did not establish that each act was specifically aimed at her.
Conclusion. For the foregoing reasons, the plaintiff has failed to establish that there were three or more acts of harassment. Most of the items that the defendants threw onto the plaintiff's property consisted of sticks, small rocks, and yard waste. These items were not thrown at the plaintiff or directly at her house, but rather into her yard.[8] Moreover, these acts, while childish, did not cause damage to the plaintiff's property.
Further, C.W.'s statement to the plaintiff that she needed to paint her house, must fall outside of a constitutionally protected category to be a valid basis for the 258E order against her. See Commonwealth v. Johnson, 470 Mass. 300, 311 (2014). This statement did not constitute a true threat or fighting words. Rather, it constituted protected speech and therefore cannot serve as the basis of the 258E order against C.W. See O'Brien, 461 Mass. at 422-425.
The c. 258E orders entered on May 30, 2017, against J.W. and C.W. are vacated.
So ordered.
Vacated.

The cases were consolidated for hearing in this court.

The orders expired on February 28, 2018.

The plaintiff also contends that C.W. asked her about her church and her belief in God, and that C.W. called her a "bitch." As none of this speech amounts to "fighting words" or "true threats," it cannot be used as a requisite act to support the order against C.W. See O'Brien v. Borowski, 461 Mass. 415, 422-424 (2012).

These videos were played and entered in evidence at the hearing.

As we assume that the plaintiff experienced fear, we do not address whether she experienced intimidation or abuse.

The plaintiff testified that prior to 2013 a stick hurled at her house broke a window, and that when she looked outside, she saw only C.W., but she (the plaintiff) did not see C.W. throw the stick.